JMM:CPK:ECW

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

★   **JUL 24 2014**   ★

- - - - - - - - - - - - - - - - - - X   LONG ISLAND OFFICE

IN THE MATTER OF THE APPLICATION OF
THE UNITED STATES OF AMERICA FOR
SEARCH WARRANTS FOR THE PREMISES
KNOWN AND DESCRIBED AS:

**TO BE FILED UNDER SEAL**

AFFIDAVIT IN SUPPORT OF
APPLICATION FOR
SEARCH WARRANTS

AKR INCORPORATED
100 SWEENEYDALE AVENUE
BAYSHORE, NEW YORK,

**14-0685M**

BRANDSWAY INTERNATIONAL
300 KARIN LANE, UNIT #3
HICKSVILLE, NEW YORK,

CENTERPOINT BRANDS INCORPORATED
303 SMITH STREET, UNIT #3
FARMINGDALE, NEW YORK,

CENTRAL SUPPLY INCORPORATED
4111 GLENWOOD ROAD,
BROOKLYN, NEW YORK,

COAST TO COAST
1058 PACIFIC STREET
BROOKLYN, NEW YORK,

EXCEL WHOLESALE DISTRIBUTORS
15-13 132ND STREET
COLLEGE POINT, NEW YORK,

GENERAL MERCHANDISE WHOLESALE
130 GAZZA BOULEVARD
FARMINGDALE, NEW YORK,

I & A MERCHANDISE INCORPORATED
141 47TH STREET,
BROOKLYN, NEW YORK,

- - - - - - - - - - - - - - - - - X

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - X

NPI INCORPORATED
68 33RD STREET
BROOKLYN, NEW YORK,

PRICE MASTER INCORPORATED
57-07 31ST AVENUE
WOODSIDE, NEW YORK,

PRIDE PRODUCTS CORPORATION
4333 VETERANS MEMORIAL HIGHWAY
RONKONKOMA, NEW YORK,

SHAH DISTRIBUTORS INCORPORATED
47 ROSELLE STREET
MINEOLA, NEW YORK, AND

TOP CHOICE TRADING INCORPORATED
19-40 FLUSHING AVENUE
RIDGEWOOD, NEW YORK

- - - - - - - - - - - - - - - - - - X

**TO BE FILED UNDER SEAL**

AFFIDAVIT IN SUPPORT OF
APPLICATION FOR
SEARCH WARRANTS
(caption contd.)

EASTERN DISTRICT OF NEW YORK, SS:

   RICHARD BRANDA, being duly sworn, deposes and says that he is a Special Agent with Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"), duly appointed according to law and acting as such.

   Upon information and belief, there is probable cause to believe that there will be found within the premises known and described as

   (a) AKR INCORPORATED, 100 SWEENEYDALE AVENUE, BAYSHORE, NEW YORK,

   (b) BRANDSWAY INTERNATIONAL, 300 KARIN LANE, UNIT #3, HICKSVILLE, NEW YORK,

   (c) CENTERPOINT BRANDS INCORPORATED, 303 SMITH STREET, UNIT #3, FARMINGDALE, NEW YORK,

   (d) CENTRAL SUPPLY INCORPORATED, 4111 GLENWOOD ROAD, BROOKLYN, NEW YORK,

   (e) COAST TO COAST, 1058 PACIFIC STREET, BROOKLYN, NEW YORK,

   (f) EXCEL WHOLESALE DISTRIBUTORS, 15-13 132ND STREET, COLLEGE POINT, NEW YORK,

   (g) GENERAL MERCHANDISE WHOLESALE, 130 GAZZA BOULEVARD, FARMINGDALE, NEW YORK,

   (h) I & A MERCHANDISE INCORPORATED, 141 47TH STREET, BROOKLYN, NEW YORK,

   (i) NPI INCORPORATED, 68 33RD STREET, BROOKLYN, NEW YORK,

   (j) PRICE MASTER INCORPORATED, 57-07 31ST AVENUE, WOODSIDE, NEW YORK,

   (k) PRIDE PRODUCTS CORPORATION, 4333 VETERANS MEMORIAL HIGHWAY, RONKONKOMA, NEW YORK,

(1)   SHAH DISTRIBUTORS INCORPORATED, 47 ROSELLE STREET,
      MINEOLA, NEW YORK, and

(m)   TOP CHOICE TRADING INCORPORATED, 19-40 FLUSHING
      AVENUE, RIDGEWOOD, NEW YORK,

(collectively, the "SUBJECT PREMISES"), more fully described in

¶¶ 6-31 below and in Attachment A hereto, certain property,

specified in ¶¶ 51-57 below and in Attachment B hereto (both

attachments are incorporated herein by reference), all of which

constitutes fruits, evidence and instrumentalities of violations

of: Title 18, United States Code, Sections 371, 1341, 1349 and

2320(a).

     The source of your deponent's information and the

grounds for his belief are as follows:

     1.   I have been a Special Agent with HSI and its

predecessor agencies since 1998.  I am responsible, among other

things, for conducting and assisting in investigations into the

activities of individuals and organizations engaged in

trafficking of counterfeit goods.  These investigations are

conducted both in an undercover and overt capacity.  I have

participated in investigations involving the execution of search

warrants at both residential and business locations.

     2.   The facts set forth in this affidavit are based

upon my personal knowledge and observations, conversations with

law enforcement officers, my review of documents related to this

investigation, and my training and experience.  Because this

affidavit is submitted for the limited purpose of establishing

4

probable cause in support of the application for search warrants, it does not set forth each and every fact that I learned during the course of this investigation.

## THE TRADEMARK COUNTERFEITING ACT

3.    The Trademark Counterfeiting Act of 1984, as amended, which made trafficking in counterfeit goods a federal crime, is codified at Title 18, United States Code, Section 2320. 18 U.S.C. § 2320(a) provides, in pertinent part, that:

> Whoever intentionally—
>
> (1) traffics in goods ... and knowingly uses a counterfeit mark on or in connection with such goods ...
>
> (2) traffics in labels ... boxes, containers ... or packaging of any type or nature, knowing that a counterfeit mark has been applied thereto, the use of which is likely to cause confusion, to cause mistake, or to deceive ...
>
> (4) traffics in a counterfeit drug,
>
> or attempts or conspires to violate any of paragraphs (1) through (4) [shall be guilty of a felony].

4.    18 U.S.C. § 2320(f)(1) defines a "counterfeit mark" as, in pertinent part:

(A) a spurious mark—
        (i) that is used in connection with
trafficking in any goods ... labels ...
boxes, containers ... or packaging of any
type of nature;
        (ii) that is identical with, or
substantially indistinguishable from, a mark
registered on the principal register in the
United States Patent and Trademark Office and
in use, whether or not the defendant knew
such mark was so registered;
        (iii) that is applied to or used in
connection with the goods ... for which the
mark is registered with the United States
Patent and Trademark Office, or is applied to
or consists of a label ... box, container ...
or packaging of any type or nature that is
designed, marketed, or otherwise intended to
be used on or in connection with the goods
... for which the mark is registered in the
United States Patent and Trademark Office;
and
        (iv) the use of which is likely to cause
confusion, to cause mistake, or to deceive
. . . .

    5.    18 U.S.C. Section § 2320(f)(6) defines a

"counterfeit drug" as "a drug, as defined by § 201 of the Federal

Food, Drug, [sic] and Cosmetic Act, that uses a counterfeit mark

on or in connection with the drug."  Section 201 of the FDCA is

codified at Title 21, United States Code, § 321.  21 U.S.C. §

321(g)(1)(B) defines "drug" as, among other things, "articles

intended for use in the diagnosis, cure, mitigation, treatment,

or prevention of disease in man ...."

6

## THE SUBJECT PREMISES

**A.   AKR INCORPORATED, 100 SWEENEYDALE AVENUE, BAYSHORE, NEW YORK**

6.   AKR INCORPORATED, 100 SWEENEYDALE AVENUE, BAYSHORE, NEW YORK ("AKR") is located in a one story brick building with red brick in the center portion of the building and white on each side. The left side has two cargo bays and the middle has an office entrance. The right side has three cargo bays. A sign on the building reads "100."

7.   Attachment A to this affidavit includes a photograph of AKR taken in July, 2014.

**B.   BRANDSWAY INTERNATIONAL, 300 KARIN LANE, UNIT #3, HICKSVILLE, NEW YORK**

8.   BRANDSWAY INTERNATIONAL, 300 KARIN LANE, UNIT #3, HICKSVILLE, NEW YORK ("BRANDSWAY") is located in a tan brick warehouse with two cargo bays and one entrance way with the name "Brandsway" written on a metal door.

9.   Attachment A to this affidavit includes a photograph of BRANDSWAY taken in July, 2014.

**C.   CENTERPOINT BRANDS INCORPORATED, 303 SMITH STREET, FARMINGDALE, NEW YORK**

10.   CENTERPOINT BRANDS INCORPORATED, 303 SMITH STREET, UNIT #3, FARMINGDALE, NEW YORK ("CENTERPOINT") is located in a tan brick warehouse with entrance at rear of building with a sign on the right side of the building that says "Unit 3" and a cargo bay on right of sign.

7

11. Attachment A to this affidavit includes a photograph of CENTERPOINT taken in July, 2014.

**D.  CENTRAL SUPPLY INCORPORATED, 4111 GLENWOOD ROAD
     BROOKLYN, NEW YORK**

12. CENTRAL SUPPLY INCORPORATED, 4111 GLENWOOD ROAD, BROOKLYN, NEW YORK ("CENTRAL") is located in a two story brick warehouse and the office entrance has a sign above it that says "showroom" and on the door is a number "4111-23."

13. Attachment A to this affidavit includes a photograph of CENTRAL taken in June, 2014.

**E.  COAST TO COAST, 1058 PACIFIC STREET
     BROOKLYN, NEW YORK**

14. COAST TO COAST, 1058 PACIFIC STREET, BROOKLYN, NEW YORK ("CTC") is located in a one story red brick warehouse with one cargo bay and one entrance way with a sign next to it that says "Coast to Coast Sales 1058 Pacific Street."

15. Attachment A to this affidavit includes a photograph of CTC taken in June, 2014.

**F.  EXCEL WHOLESALE DISTRIBUTORS, 15-13 132ND STREET
     COLLEGE POINT, NEW YORK**

16. EXCEL WHOLESALE DISTRIBUTORS, 15-13 132ND STREET, COLLEGE POINT, NEW YORK ("EXCEL") is located in a tan brick warehouse with one cargo bay and a sign above the cargo bay that says "Excel Wholesale Inc. Cash and Carry Suppliers of Health and Beauty Aid and General Merchandise 15-13."

8

17. Attachment A to this affidavit includes a photograph of EXCEL taken in July, 2014.

**G. GENERAL MERCANDISE WHOLESALE, 130 GAZZA BOULEVARD FARMINGDALE, NEW YORK**

18. GENERAL MERCHANDISE WHOLESALE, 130 GAZZA BOULEVARD, FARMINGDALE, NEW YORK ("GENERAL") is located in a tan brick warehouse with one cargo bay entrance with a sign next to the cargo bay that says "GMW 130 GAZZA BOULEVARD."

19. Attachment A to this affidavit includes a photograph of GENERAL taken in July, 2014.

**H. I & A MERCHANDISE INCORPORATED, 141 47TH STREET BROOKLYN, NEW YORK**

20. I & A MERCHANDISE INCORPORATED, 141 47TH STREET, BROOKLYN, NEW YORK ("I & A") is located in a white concrete warehouse with two cargo bays and one doorway.

21. Attachment A to this affidavit includes a photograph of I & A taken in June, 2014.

**I. NPI INCORPORATED, 68 33RD STREET BROOKLYN, NEW YORK**

22. NPI INCORPORATED, 68 33rd STREET, BROOKLYN, NEW YORK ("NPI") is located in a building with two orange doors with the number "68" above the door with offices on the second floor and a sign on the door to the offices says "NPI 68-33 Street Bklyn NY 11232." The offices have both a first floor and a second floor but entry is on the second floor.

23.  Attachment A to this affidavit includes a photograph of NPI taken in June, 2014.

**J.   PRICE MASTER INCORPORATED, 57-07 31ST AVENUE WOODSIDE, NEW YORK**

24.  PRICE MASTER INCORPORATED, 57-07 31ST AVENUE, WOODSIDE, NEW YORK ("PRICE MASTER") is located in a red brick warehouse with four cargo bays and one office entryway with a sign on the door that says "Price Master."

25.  Attachment A to this affidavit includes a photograph of PRICE MASTER taken in July, 2014.

**K.   PRIDE PRODUCTS CORPORATION, 4333 VETERANS MEMORIAL HIGHWAY RONKONKOMA, NEW YORK**

26.  PRIDE PRODUCTS CORPORATION, 4333 VETERANS MEMORIAL HIGHWAY, RONKONKOMA, NEW YORK ("PRIDE") is located in two buildings, a white concrete building with an office entranceway in front with a sign above the door that says "Pride Products 43333" and a second building, next to the first building, separated by a small alley way and is a red brick warehouse that has a sign that says "Pride" and has a logo underneath the word. There is a security booth on the side of the red brick warehouse.

27.  Attachment A to this affidavit includes a photograph of PRIDE taken in July, 2014.

10

**L.   SHAH DISTRIBUTORS INCORPORATED, 47 ROSELLE STREET
      MINEOLA, NEW YORK**

28.   SHAH DISTRIBUTORS INCORPORATED, 47 ROSELLE STREET, MINEOLA, NEW YORK ("SHAH") is located in a red brick building that has one cargo bay, one office entryway and a sign that says, in part, "Shah Distributors, Inc."

29.   Attachment A to this affidavit includes a photograph of SHAH taken in July, 2014.

**M.   TOP CHOICE TRADING INCORPORATED, 19-40 FLUSHING AVENUE
      RIDGEWOOD, NEW YORK**

30.   TOP CHOICE TRADING INCORPORATED, 19-40 FLUSHING AVENUE, RIDGEWOOD, NEW YORK ("TOP CHOICE") is located in a red brick building with one cargo entrance, one office entryway and a sign that says "Top Choice Trading USA Inc. 19-40 Flushing Avenue."

31.   Attachment A to this affidavit includes a photograph of TOP CHOICE taken in July, 2014.

<b><u>PROBABLE CAUSE</u></b>

**I.   The March 2014 Search Warrants**

32.   On March 6, 2014, investigators with the Nassau County District Attorney's Office ("NCDA") executed six search warrants at commercial and residential premises in Franklin Square, Freeport, Oceanside and Valley Stream, New York. Collectively, these were locations associated with three companies, Best Price Traders NA, Inc. ("BEST PRICE"), Universal

Price, Inc. ("UNIVERSAL") and Glow Derma, Inc. ("GLOW DERMA"), owned and operated by brothers Hamant Mullick ("MULLICK"), who ran the first two, and Pardeep Malik ("MALIK"), who ran the latter.

33.    Investigators recovered tens of thousands of units of counterfeit health and beauty products, including substances, labels and packaging bearing counterfeit Chapstick®, Vicks®, Johnson's®, Vaseline® and Always® trademarks.  Investigators also seized heavy equipment and chemicals indicating that these substances were actually manufactured in these locations.  In all, investigators seized seven tractor trailers full of products, supplies and packaging.  Included among seized items were computers which contained electronic business records as well as a variety of business and financial records including invoices reflecting sales of many of the same products seized in the searches.

34.    Security officials with the associated rights holders – Pfizer® (Chapstick®), Proctor and Gamble® (Vicks® Vaporub and Inhaler, Always® Sanitary Pads), Johnson and Johnson® (Johnson's® Baby Oil, Lotion and Shampoo) and Unilever® (Vaseline®) – examined the seized products and packaging and confirmed that they bore counterfeit versions of trademarks registered by the rights holders on the Principal Register of the United States Patent and Trademark Office which were in and for use with these products.  Moreover, the rights holders confirmed

that neither MALIK, MULLICK nor any of these three companies was authorized to either manufacture or distribute their products.

## II.  The Arrests and Indictments of MALIK and MULLICK

35.  Simultaneous with the searches, NCDA investigators arrested MALIK and MULLICK, who were charged on March 6, 2014 in a criminal complaint filed in Nassau County Supreme Court with Trademark Counterfeiting in the First Degree, and on March 20, indicted on that same charge, which requires an infringement amount of over $100,000.

36.  On March 21, 2014, NCDA prosecutors referred the cases for federal prosecution by the United States Attorney's Office for the Eastern District of New York ("EDNY"), and the United States Department of Justice, Criminal Division, Computer Crime and Intellectual Property Section ("CCIPS").  The lead state prosecutor was designated a Special Assistant United States Attorney to work with EDNY and CCIPS prosecutors on the federal investigation and prosecution.  HSI, the Federal Bureau of Investigation ("FBI"), and the Food and Drug Administration Office of Criminal Investigations ("FDA/OCI") opened a joint investigation.

37.  On March 28, 2014, MALIK and MULLICK were charged in a criminal complaint filed in the Eastern District of New York with trafficking in counterfeit goods, in violation of Title 18, United States Code, Section 2320(a), under Matter No. 14-290, a copy of which is included in Attachment C hereto.  Both

defendants were ordered held under a permanent order of detention.[1]

38. On July 16, 2014, a grand jury sitting in Central Islip returned a five-count indictment charging MALIK and MULLICK with conspiracy to traffic in counterfeit goods and labels and packaging, in violation of Title 18, United States Code, Section 371, trafficking in counterfeit goods, in violation of Title 18, United States Code, Section 2320(a)(1), trafficking in counterfeit labels and packaging, in violation of Title 18, United States Code, Section 2320(a)(2), trafficking in counterfeit drugs, in violation of Title 18, United States Code, Section 2320(a)(4) (based specifically on the counterfeit Vicks® Vaporub and Inhaler), and conspiracy to commit mail fraud, in violation of Title 18, United States Code, Section 1349, under docket number 14-cr-402 (ADS), a copy of which is included in Attachment C hereto. The indictment charged offenses occurring from 2008 to 2014.

## III. The SUBJECT PREMISES:
   MALIK's and MULLICK's Customers and Suppliers

39. Investigators have determined, based upon their review of invoices, shipping records and financial records seized during the March 6, 2014 and subsequent searches, and interviews with employees of BEST PRICE, UNIVERSAL PRICE and GLOW DERMA,

---

[1]    While MULLICK was arrested and arraigned on the complaint on March 28, 2014, MALIK was still incarcerated on the state charges, and was not arrested and arraigned on the federal complaint until April 24.

that MALIK and MULLICK were almost exclusively wholesalers, selling to distributors in the Eastern District of New York, and elsewhere in the United States, which then resold the goods to retail outlets. In interviews, CI1 and CI2 stated that they were personally involved in the manufacturing and delivery of certain goods manufactured by BEST PRICE, UNIVERSAL PRICE and GLOW DERMA. They advised us of the names of the wholesalers that sales were made to, and that information was consistent with the invoices seized.  In addition, other employees told us what types of goods were sold and that information was also confirmed by invoices. In addition, GLOW DERMA purchase invoices also confirmed the statements of CI2 because the purchase invoices showed that GLOW DERMA had bought the packaging material for these counterfeit products including Always sanitary pads and Johnson & Johnson products.

40.    Investigators have determined also, based similarly on document review and employee interviews, that while MALIK and MULLICK manufactured their purported health and beauty products themselves, they often purchased labels and packaging bearing counterfeit trademarks from outside suppliers and then affixed the labels and packaging to their products.

41.    The SUBJECT PREMISES comprise twelve of those distributors (collectively, the "SUBJECT DISTRIBUTORS"), and one supplier of counterfeit packaging (the "SUBJECT SUPPLIER").   It has been my experience in investigations of trafficking in

15

counterfeit goods that counterfeit property is frequently held on company property in trucks, containers and property consigned to the company.

### A. Counterfeit Sales to the SUBJECT DISTRIBUTORS

42.    The twelve distributors whose facilities the government is seeking authority to search are AKR, BRANDSWAY, CENTERPOINT, CENTRAL, CTC, EXCEL, GENERAL, I & A, PRICE MASTER, PRIDE, SHAH and TOP CHOICE.  Investigators identified the SUBJECT DISTRIBUTORS, and the counterfeit products they purchased from MALIK and MULLICK, primarily from invoices seized during the March 6, 2014 searches.  Additionally, they interviewed employees of BEST PRICE, UNIVERSAL and GLOW DERMA who recalled delivering counterfeit products to a few of the SUBJECT DISTRIBUTORS.  Below is a table listing recent sales (approximately the last two years) to the SUBJECT DISTRIBUTORS by MALIK and MULLICK of the same products which were recovered during the searches and determined to be counterfeit.  Where investigators were told by employees about deliveries to the SUBJECT DISTRIBUTORS, but have not recovered any corresponding invoices, the sales amount is designated "TBD," for to be determined.[2]

---

[2]      Investigators did not recover any Glow Derma invoices but believe the invoices did exist at the time of the arrests of Mullick and Malik but have reason to believe the documents existed at the time of the arrests.

| | | | |
|---|---|---|---|
| AKR | 2012:   $20,450<br>2013:   TBD<br>2014:   TBD | Johnson's®<br>Vaseline®<br>Vicks® | BEST PRICE |
| BRANDSWAY | 2012:   $12,000 | Vicks® | BEST PRICE |
| CENTERPOINT | 2012:   $1,890<br>2013:   $5,409 | Vicks® | UNIVERSAL |
| CENTRAL | 2013: $198,482 | Chapstick®<br>Johnson's®<br>Vaseline®<br>Vicks® | UNIVERSAL |
| CTC | 2012:   $27,208 | Chapstick®<br>Vaseline®<br>Vicks® | UNIVERSAL |
| EXCEL | 2013: $115,473<br>2014:   $19,179 | Chapstick®<br>Johnson's®<br>Vaseline®<br>Vicks® | UNIVERSAL |
| GENERAL | 2013: $121,360<br>2014:    $3,189 | Chapstick®<br>Johnson's®<br>Vaseline®<br>Vicks® | BEST PRICE<br>UNIVERSAL |
| I & A | 2013:   $15,786<br>2014: $103,038 | Johnson's®<br>Vaseline®<br>Vicks® | BEST PRICE |
| PRICE MASTER | 2013: $134,891<br>2014:   $11,136 | Chapstick®<br>Johnson's®<br>Vicks® | BEST PRICE<br>UNIVERSAL |
| PRIDE | 2013:   $28,353<br>2014:    $8,941 | Chapstick®<br>Johnson's®<br>Vaseline®<br>Vicks® | UNIVERSAL |
| SHAH | 2013: $308,753<br>2014:   $29,457 | Chapstick®<br>Johnson's®<br>Vaseline®<br>Vicks® | BEST PRICE<br>UNIVERSAL |
| TOP CHOICE | 2013:   $62,360 | Chapstick®<br>Johnson's® | UNIVERSAL |

| | | | | |
|---|---|---|---|---|
| TOP CHOICE | 2014: | $1,512 | Vaseline® Vicks® | |

43. Because MALIK and MULLICK sold counterfeit goods to the SUBJECT DISTRIBUTORS, their facilities are all likely to contain evidence of trafficking in counterfeit goods, whether or not the SUBJECT DISTRIBUTORS were knowingly purchasing counterfeit goods and/or complicit in the crimes. Moreover, based upon my training and experience investigating financial crimes, I know that businesses generally must maintain invoices and other financial records for at least five years for tax purposes, and thus, even if the SUBJECT DISTRIBUTORS no longer have in their inventories all or some of the counterfeit goods purchased from MALIK and MULLICK, they almost surely will still have business records relating to those purchases.

**B. Parallel Legitimate Sales to the SUBJECT DISTRIBUTORS**

44. Investigators believe strongly, however, that many of the SUBJECT DISTRIBUTORS were in fact purchasing counterfeit products knowingly from MALIK and MULLICK because they were also purchasing, or had purchased, the genuine products directly from the rights holders. Thus, they were aware of the legitimate supply chains and the measures the rights holders took to guarantee the pedigree of their products. The table below lists the SUBJECT DISTRIBUTORS that also purchased directly from the

18

rights holders some of the same counterfeit products bought from MALIK and MULLICK.

| | | | |
|---|---|---|---|
| AKR | ✔ | ✔ | |
| CENTRAL | | | ✔ |
| CTC | | ✔ | |
| I & A | ✔ | ✔ | ✔ |
| PRICE MASTER | ✔ | | ✔ |
| PRIDE | | ✔ | |

45.   Consequently, these locations are likely to contain evidence not only of purchases of counterfeit goods from MALIK and MULLICK, but also of trafficking of counterfeit goods by these SUBJECT DISTRIBUTORS in their own right.

**C.   Additional Indicia of Criminal Activity by the SUBJECT DISTRIBUTORS**

***Cash Deposits***

46.   Based upon my training and experience, I know that businesses dealing partially or entirely in illegal goods conduct far more cash transactions than wholly legitimate businesses. Among other things, this makes it easier to conceal the source and destination of the money, and to omit some or all of the

19

income from corporate tax returns. By contrast, if a company is conducting wholly legitimate business, it makes far more sense to conduct transactions by electronic transfer or by check, which is faster and far more secure than accumulating large amounts of cash which have to be deposited in person on a regular basis.

47. Two of the SUBJECT DISTRIBUTORS have made very substantial cash deposits according to their bank records. AKR, since just June 2011, has made cash deposits of $11,000,000. PRICE MASTER, since 2000, has made cash deposits of $42,000,000.

### *Undercover Purchase of Counterfeit Batteries from AKR*

48. In June 2014, Proctor and Gamble® representatives made an undercover purchase from AKR of purported Duracell® batteries bearing counterfeit trademarks from AKR, after negotiating the transaction by email with one of the proprietors. Thus, there is likely to be evidence at AKR not only of trafficking in counterfeit health and beauty products, but also of counterfeit batteries.

### D. The SUBJECT SUPPLIER

49. According to an employee of GLOW DERMA, MALIK's company, NPI supplied the boxes bearing counterfeit Johnson's® and Always® trademarks, used with Baby Oil and Maxipads® respectively, which were seized during the March 6, 2014 searches. In addition, FDA/OCI has spoken with an NPI employee who confirmed that the company makes such products.

L.    **Conclusion**

50.   Based on the above-described evidence, I submit there is probable cause to believe that within the SUBJECT PREMISES there will be found fruits, evidence and instrumentalities of violations of Title 18, United States Code, Sections 371, 1341, 1349 and 2320(a).

## ITEMS TO BE SEIZED

51.   I am seeking authority to search for and seize the following items, which constitute evidence, fruits and instrumentalities of violations of Title 18, United States Code, Sections 371, 1341, 1349 and 2320(a) (i) from within the SUBJECT PREMISES, (ii) from the persons of any owners, managers or employees of AKR Incorporated, Brandsway International, Centerpoint Brands Incorporated, Central Supply Incorporated, Coast to Coast, Excel Wholesale Distributors, General Wholesale Merchandise, I & A Merchandise Incorporated, NPI Incorporated, Price Master Incorporated, Pride Products Corporation, Shah Distributors Incorporated and Top Choice Trading Incorporated therein, (iii) from any safes, lockers or closed containers and (iv) from any trucks on the company property bearing the company name or logo, any cargo that is consigned to the company being searched and any containers on the company property therein:

> (a)   any and all records or documentation reflecting ownership of Best Price Traders NA Incorporated, Universal Price Incorporated, Glow Derma Price Incorporated, AKR Incorporated, Best Price Traders NA Incorporated, Brandsway International,

21

Centerpoint Brands Incorporated, Central Supply
Incorporated, Coast to Coast, Excel Wholesale
Distributors, General Wholesale Merchandise, I & A
Merchandise Incorporated, NPI Incorporated, Price
Master Incorporated, Pride Products Corporation,
Shah Distributors Incorporated and Top Choice
Trading Incorporated;

(b) any and all documents, materials or devices
relating to the importation, purchase,
manufacture, sale, shipment, handling, or
distribution of goods bearing counterfeit goods,
as well as related packaging, labels, labeling and
literature;

(c) any and all quantities and forms of goods bearing
counterfeit trademarks;

(d) any and all documents, relating to employees,
customers, or suppliers of Best Price Traders NA
Incorporated, Universal Price Incorporated, Glow
Derma Price Incorporated, AKR Incorporated,
Brandsway International, Centerpoint Brands
Incorporated, Central Supply Incorporated, Coast
to Coast, Excel Wholesale Distributors, General
Wholesale Merchandise, I & A Merchandise
Incorporated, NPI Incorporated, Price Master
Incorporated, Pride Products Corporation, Shah
Distributors Incorporated and Top Choice Trading
Incorporated, which pertain to the manufacture or
distribution of goods bearing counterfeit
trademarks;

(e) any contracts, agreements, records and/or
documentation of agreements made between Best
Price Traders NA Incorporated, Universal Price
Incorporated, Glow Derma Price Incorporated, AKR
Incorporated, Brandsway International, Centerpoint
Brands Incorporated, Central Supply Incorporated,
Coast to Coast, Excel Wholesale Distributors,
General Wholesale Merchandise, I & A Merchandise
Incorporated, NPI Incorporated, Price Master
Incorporated, Pride Products Corporation, Shah
Distributors Incorporated and Top Choice Trading
Incorporated with any other entity providing goods
bearing counterfeit trademarks;

(f) any and all communication, in any form, received
or sent by Pardeep Malik, Hamant Mullick, Best
Price Traders NA Incorporated, Universal Price

22

Incorporated, Glow Derma Price Incorporated, AKR
Incorporated, Brandsway International, Centerpoint
Brands Incorporated, Central Supply Incorporated,
Coast to Coast, Excel Wholesale Distributors,
General Wholesale Merchandise, I & A Merchandise
Incorporated, NPI Incorporated, Price Master
Incorporated, Pride Products Corporation, Shah
Distributors Incorporated and Top Choice Trading
Incorporated to any individual or entity
associated with the purchase, sale, shipment
distribution, handling, use, manufacturing, or
advertisement of goods bearing counterfeit marks;

(g)   any and all transactional financial records for
Best Price Traders NA Incorporated, Universal
Price Incorporated, Glow Derma Price Incorporated,
AKR Incorporated, Brandsway International,
Centerpoint Brands Incorporated, Central Supply
Incorporated, Coast to Coast, Excel Wholesale
Distributors, General Wholesale Merchandise, I & A
Merchandise Incorporated, NPI Incorporated, Price
Master Incorporated, Pride Products Corporation,
Shah Distributors Incorporated and Top Choice
Trading Incorporated, including but not limited
to, checks, cancelled checks, check registers,
ledgers, bank statements, account statements, wire
transfers, deposit items, credit card processing
equipment, and any other financial papers,
including proceeds, such as U.S. currency, which
relate to the purchase, sale, shipment,
distribution, handling, advertisement, use or
manufacturing of goods bearing counterfeit marks;

(h)   any and all sales tax records and reports of sales
by Best Price Traders NA Incorporated, Universal
Price Incorporated, Glow Derma Price Incorporated,
AKR Incorporated, Brandsway International,
Centerpoint Brands Incorporated, Central Supply
Incorporated, Coast to Coast, Excel Wholesale
Distributors, General Wholesale Merchandise, I & A
Merchandise Incorporated, NPI Incorporated, Price
Master Incorporated, Pride Products Corporation,
Shah Distributors Incorporated and Top Choice
Trading Incorporated;

(i)   any and all financial documents related to Best
Price Traders NA Incorporated, Universal Price
Incorporated, Glow Derma Price Incorporated, AKR
Incorporated, Brandsway International, Centerpoint

Brands Incorporated, Central Supply Incorporated, Coast to Coast, Excel Wholesale Distributors, General Wholesale Merchandise, I & A Merchandise Incorporated, NPI Incorporated, Price Master Incorporated, Pride Products Corporation, Shah Distributors Incorporated and Top Choice Trading Incorporated, including, but not limited to, bank records, mortgage documents and income tax returns;

(j) any and all electronic devices which are capable of analyzing, creating, displaying, converting or transmitting electronic or magnetic computer impulses or data, including computers, computer components, computer peripherals, work processing equipment, modems, monitors, printers, plotters, encryption circuit boards, optical scanners, external hard drives, digital video recorders and monitors, other computer related electronic devices, and wireless devices, such as cellular telephones and smart phones;

(k) any computers, electronic media or wireless devices, such as cellular telephones and smart phones, that were or may have been used as a means to commit the offenses described above;

(l) for any computer, computer hard drive, or other physical object upon which computer data can be recorded (hereinafter, "COMPUTER") that is called for by this warrant, or that might contain things otherwise called for by this warrant:

- evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

- evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

- evidence of the lack of such malicious software;

- evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

- evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

- evidence of the times the COMPUTER was used;

- passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

- documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

- contextual information necessary to understand the evidence described in this attachment.

(m)  records and things evidencing the use of the specific Internet Protocol addresses, including:

- routers, modems, and network equipment used to connect computers to the Internet;

- records of Internet Protocol addresses used;

- records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

52.  As used above, the terms "materials," "records", "information" and "documents" include all of the described items of evidence, dated from 2008 to the present, which is the time

25

period covered by the invoices seized, in whatever form and by whatever means such materials, records, or documents, their drafts, or their modifications may have been created or stored.

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

53. As described above and in Attachment B, this application seeks permission to search for records that might be found on the SUBJECT PREMISES, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media. Thus, the warrants applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

54. I submit that if a computer or storage medium is found on the SUBJECT PREMISES, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons.

> (a) Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

(b)   Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

(c)   Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

(d)   Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

(e)   As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any computer in the SUBJECT PREMISES because:

> • Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and

chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

- Forensic evidence on a computer or storage medium can also indicate who has used or controlled the computer or storage medium. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, registry information, configuration files, user profiles, e-mail, e-mail address books, "chat," instant messaging logs, photographs, the presence or absence of malware, and correspondence (and the data associated with the foregoing, such as file creation and last-accessed dates) may be evidence of who used or controlled the computer or storage medium at a relevant time.

- A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

- The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the

28

computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

• Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

55. In most cases, a thorough search of a premises for information that might be stored on storage media requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

29

(a) *The time required for an examination*. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site.  Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence.  Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

(b) *Technical requirements*.  Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site.  The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the SUBJECT PREMISES.  However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

(c) *Variety of forms of electronic media*.  Records sought under these warrants could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

56.  Based on the foregoing, and consistent with Rule 41(e)(2)(B), when persons executing the warrants conclude that it would be impractical to review the media on-site, the warrants I am applying for would permit seizing or imaging storage media that reasonably appear to contain some or all of the evidence

described in the warrants, thus permitting its later examination consistent with the warrants. The examination may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrants.

57. Finally, it appears that AKR Incorporated, Brandsway International, Centerpoint Brands Incorporated, Central Supply Incorporated, Coast to Coast, Excel Wholesale Distributors, General Wholesale Merchandise, I & A Merchandise Incorporated, NPI Incorporated, Price Master Incorporated, Pride Products Corporation, Shah Distributors Incorporated and Top Choice Trading Incorporated are functioning companies that conduct some legitimate business. The seizure of those companies' computers may limit their ability to conduct their legitimate business. As with any search warrant, I expect that these warrants will be executed reasonably. Reasonable execution will likely involve conducting an investigation on the scene of what computers, or storage media, must be seized or copied, and what computers or storage media need not be seized or copied. Where appropriate, officers will copy data, rather than physically seize computers, to reduce the extent of disruption. If employees of the companies so request, the agents will, to the extent practicable, attempt to provide the employees with copies of data that may be necessary or important to the continuing

31

function of the companies' legitimate business. If, after inspecting the computers, it is determined that some or all of this equipment is no longer necessary to retrieve and preserve the evidence, the government will return it.

### EXPERT ASSISTANCE

58. Because the identification of counterfeit trademarks is often very difficult, and can turn on fine technical distinctions, I seek authority to have civilian industry representatives accompany the searchers specifically for the purpose of identifying goods bearing copyright-infringing images and counterfeit trademarks. I will make sure that law enforcement agents have secured the SUBJECT PREMISES before such civilian representatives are allowed inside, and I will not allow such civilian representatives to examine business records or other materials which clearly do not constitute goods bearing counterfeit trademarks, or materials used for their manufacture or packaging.

32

WHEREFORE, I respectfully request that a search warrant be issued authorizing your affiant or any law enforcement agents to search the SUBJECT PREMISES for certain property, specified in Attachment B hereto, all of which constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Sections 371, 1341, 1349 and 2320(a). Finally, I further request, because this investigation is ongoing, that the affidavit be ordered filed under seal until further order of the Court.

Dated:      Central Islip, New York
            July 2⁄, 2014

                                    RICHARD BRANDA
                                    Special Agent
                                    Homeland Security Investigations

Sworn to before me this
2⁄ day of July, 2014

/s/ William D. Wall
     HONORABLE WILLIAM D. WALL
     UNITED STATES MAGISTRATE JUDGE
     EASTERN DISTRICT OF NEW YORK

ATTACHMENTS TO AFFIDAVIT IN SUPPORT OF ISSUANCE OF
SEARCH WARRANTS

**ATTACHMENT A**

Property to be Searched

      The premises known and described as AKR INCORPORATED, 100 SWEENEYDALE AVENUE, BAYSHORE, NEW YORK ("AKR"), which is located in a one story brick building with red brick in the center portion of the building and white on each side. The left side has two cargo bays and the middle has an office entrance. The right side has three cargo bays. A sign on the building reads "100."



**ATTACHMENT A**

<u>Property to be Searched</u>

The premises known and described as BRANDSWAY INTERNATIONAL, 300 KARIN LANE, UNIT #3, HICKSVILLE, NEW YORK ("BRANDSWAY"), which is located in a tan brick warehouse with two cargo bays and one entrance way with the name "Brandsway" written on a metal door.









## ATTACHMENT A

### Property to be Searched

The premises known and described as CENTERPOINT BRANDS INCORPORATED, 303 SMITH STREET, UNIT #3, FARMINGDALE, NEW YORK ("CENTERPOINT"), which is located in a tan brick warehouse with entrance at rear of building with a sign on the right side of the building that says "Unit 3" and a cargo bay on right of sign.







## ATTACHMENT A

### Property to be Searched

The premises known and described as CENTRAL SUPPLY INCORPORATED, 4111 GLENWOOD ROAD, BROOKLYN, NEW YORK ("CENTRAL"), which is located in a two story brick warehouse and the office entrance has a sign above it that says "showroom" and on the door is a number "4111-23."













**ALL DRIVERS**

TURN OFF YOUR
TRUCK ENGINES.
YOU WASTE FUEL,
AND THE NOISE
DISTURBS OUR
NEIGHBORHOOD.
WE LIKE OUR
NEIGHBORS.

GLENWOOD

**ATTACHMENT A**

Property to be Searched

The premises known and described as COAST TO COAST, 1058 PACIFIC STREET, BROOKLYN, NEW YORK ("CTC"), which is located in a one story red brick warehouse with one cargo bay and one entrance way with a sign next to it that says "Coast to Coast Sales 1058 Pacific Street."

COAST TO
COAST SALES
1058
PACIFIC ST





**ATTACHMENT A**

Property to be Searched

      The premises known and described as EXCEL WHOLESALE DISTRIBUTORS, 15-13 132ND STREET, COLLEGE POINT, NEW YORK ("EXCEL"), which is located in a tan brick warehouse with one cargo bay and a sign above the cargo bay that says "Excel Wholesale Inc. Cash and Carry Suppliers of Health and Beauty Aid and General Merchandise 15-13."



## ATTACHMENT A

### Property to be Searched

The premises known and described as GENERAL MERCHANDISE WHOLESALE, 130 GAZZA BOULEVARD, FARMINGDALE, NEW YORK ("GENERAL"), which is located in a tan brick warehouse with one cargo bay entrance with a sign next to the cargo bay that says "GMW 130 GAZZA BOULEVARD."





**ATTACHMENT A**

Property to be Searched

  The premises known and described as I & A MERCHANDISE INCORPORATED, 141 47TH STREET, BROOKLYN, NEW YORK ("I & A"), which is located in a white concrete warehouse with two cargo bays and one doorway.





RESERVED
PARKING

## ATTACHMENT A

### Property to be Searched

The premises known and described as NPI INCORPORATED, 68 33rd STREET, BROOKLYN, NEW YORK ("NPI"), which is located in a building with two orange doors with the number "68" above the door.





## ATTACHMENT A

### Property to be Searched

The premises known and described as PRICE MASTER INCORPORATED, 57-07 31ST AVENUE, WOODSIDE, NEW YORK ("PRICE MASTER"), which is located in a red brick warehouse with four cargo bays and one office entryway with a sign on the door that says "Price Master."







## ATTACHMENT A

### Property to be Searched

The premises known and described as PRIDE PRODUCTS CORPORATION, 4333 VETERANS MEMORIAL HIGHWAY, RONKONKOMA, NEW YORK ("PRIDE"), which is located in two buildings, a white concrete building with an office entranceway in front with a sign above the door that says "Pride Products 43333" and a second building, next to the first building, separated by a small alley way and is a red brick warehouse that has a sign that says "Pride" and has a logo underneath the word. There is a security booth on the side of the red brick warehouse.



Pride Products

4333

Pride



**ATTACHMENT A**

Property to be Searched

The premises known and described as SHAH DISTRIBUTORS INCORPORATED, 47 ROSELLE STREET, MINEOLA, NEW YORK ("SHAH"), which is located in a red brick building that has one cargo bay, one office entryway and a sign that says, in part, "Shah Distributors, Inc."













Shah Distributors



3/26/14

















## ATTACHMENT A

### Property to be Searched

The premises known and described as TOP CHOICE TRADING INCORPORATED, 19-40 FLUSHING AVENUE, RIDGEWOOD, NEW YORK ("TOP CHOICE"), which is located in a red brick building with one cargo entrance, one office entryway and a sign that says "Top Choice Trading USA Inc. 19-40 Flushing Avenue."









## ATTACHMENT B

## AKR INCORPORATED

The following items, which constitute evidence, fruits and instrumentalities of violations of Title 18, United States Code, Sections 371 (Conspiracy to Commit an Offense Against the United States), 1341 (Mail Fraud), 1349 (Mail Fraud Conspiracy) and 2320 (Trafficking in Counterfeit Goods), may be seized from within the premises known and described as AKR Incorporated, 100 Sweeneydale Avenue, Bayshore, New York, the persons of any owners, managers or employees of AKR Incorporated therein, and from any safes, lockers or closed containers therein, as well as any trucks on the company property bearing the company name or logo, any cargo that is consigned to AKR Incorporated and any containers on the property of AKR Incorporated by agents of Immigration and Customs Enforcement, Homeland Security Investigations, and any other federal law enforcement or task force officers assisting them, and the searchers may be accompanied by civilian industry representatives specifically for the purpose of identification of goods and packaging bearing counterfeit trademarks, and of materials used to manufacture or package such goods:

(a) any and all records or documentation reflecting ownership of AKR Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated;

(b) any and all documents, materials or devices relating to the importation, purchase, manufacture, sale, shipment, handling, or distribution of goods bearing counterfeit trademarks, as well as related packaging, labels, labeling and literature;

(c) any and all quantities and forms of goods bearing counterfeit trademarks;

(d) any and all documents relating to employees, customers, or suppliers of AKR Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Price Incorporated, which pertain to the manufacture or distribution of goods bearing counterfeit trademarks;

(e)   any contracts, agreements, records and/or documentation of agreements made between AKR Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated with any other entity providing goods bearing counterfeit trademarks;

(f)   any and all communication, in any form, received or sent by AKR Incorporated, Pardeep Malik, Hamant Mullick, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated to any individual or entity associated with the purchase, sale, shipment distribution, handling, use, manufacturing, or advertisement of goods bearing counterfeit marks;

(g)   any and all transactional financial records for AKR Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated, including but not limited to, checks, cancelled checks, check registers, ledgers, bank statements, account statements, wire transfers, deposit items, credit card processing equipment, and any other financial papers, including proceeds, such as U.S. currency, which relate to the purchase, sale, shipment, distribution, handling, advertisement, use or manufacturing of goods bearing counterfeit marks;

(h)   any and all sales tax records and reports of sales by AKR Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated;

(i)   any and all financial documents related to AKR Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated, including, but not limited to, bank records, mortgage documents and income tax returns;

2

(j)   any and all electronic devices which are capable of
      analyzing, creating, displaying, converting or
      transmitting electronic or magnetic computer impulses
      or data, including computers, computer components,
      computer peripherals, work processing equipment,
      modems, monitors, printers, plotters, encryption
      circuit boards, optical scanners, external hard
      drives, digital video recorders and monitors, other
      computer related electronic devices, and wireless
      devices, such as cellular telephones and smart phones;

(k)   any computers, electronic media or wireless devices,
      such as cellular telephones and smart phones, that
      were or may have been used as a means to commit the
      offenses described above;

(l)   for any computer, computer hard drive, or other
      physical object upon which computer data can be
      recorded (hereinafter, "COMPUTER") that is called for
      by this warrant, or that might contain things
      otherwise called for by this warrant:

      •   evidence of who used, owned, or controlled the
          COMPUTER at the time the things described in this
          warrant were created, edited, or deleted, such as
          logs, registry entries, configuration files,
          saved usernames and passwords, documents,
          browsing history, user profiles, email, email
          contacts, "chat," instant messaging logs,
          photographs, and correspondence;

      •   evidence of software that would allow others to
          control the COMPUTER, such as viruses, Trojan
          horses, and other forms of malicious software, as
          well as evidence of the presence or absence of
          security software designed to detect malicious
          software;

      •   evidence of the lack of such malicious software;

      •   evidence of the attachment to the COMPUTER of
          other storage devices or similar containers for
          electronic evidence;

      •   evidence of counter-forensic programs (and
          associated data) that are designed to eliminate
          data from the COMPUTER;

3

- evidence of the times the COMPUTER was used;

- passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

- documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

- contextual information necessary to understand the evidence described in this attachment.

(m) records and things evidencing the use of the specific Internet Protocol addresses, including:

- routers, modems, and network equipment used to connect computers to the Internet;

- records of Internet Protocol addresses used;

- records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "materials," "records", "information" and "documents" include all of the described items of evidence, dated from 2008 to the present, in whatever form and by whatever means such materials, records, or documents, their drafts, or their modifications may have been created or stored.

4

## ATTACHMENT B

### BRANDSWAY INTERNATIONAL

The following items, which constitute evidence, fruits and instrumentalities of violations of Title 18, United States Code, Sections 371 (Conspiracy to Commit an Offense Against the United States), 1341 (Mail Fraud), 1349 (Mail Fraud Conspiracy) and 2320 (Trafficking in Counterfeit Goods), may be seized from within the premises known and described as Brandsway International, 300 Karin Lane, Unit #3, Hicksville, New York, the persons of any owners, managers or employees of Brandsway International therein, and from any safes, lockers or closed containers therein, as well as any trucks on the company property bearing the company name or logo, any cargo that is consigned to Brandsway International and any containers on the property of Brandsway International by agents of Immigration and Customs Enforcement, Homeland Security Investigations, and any other federal law enforcement or task force officers assisting them, and the searchers may be accompanied by civilian industry representatives specifically for the purpose of identification of goods and packaging bearing counterfeit trademarks, and of materials used to manufacture or package such goods:

(a)   any and all records or documentation reflecting ownership of Brandsway International, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated;

(b)   any and all documents, materials or devices relating to the importation, purchase, manufacture, sale, shipment, handling, or distribution of goods bearing counterfeit trademarks, as well as related packaging, labels, labeling and literature;

(c)   any and all quantities and forms of goods bearing counterfeit trademarks;

(d)   any and all documents relating to employees, customers, or suppliers of Brandsway International, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Price Incorporated, which pertain to the manufacture or distribution of goods bearing counterfeit trademarks;

(e) any contracts, agreements, records and/or documentation of agreements made between Brandsway International, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated with any other entity providing goods bearing counterfeit trademarks;

(f) any and all communication, in any form, received or sent by Brandsway International, Pardeep Malik, Hamant Mullick, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated to any individual or entity associated with the purchase, sale, shipment distribution, handling, use, manufacturing, or advertisement of goods bearing counterfeit marks;

(g) any and all transactional financial records for Brandsway International, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated, including but not limited to, checks, cancelled checks, check registers, ledgers, bank statements, account statements, wire transfers, deposit items, credit card processing equipment, and any other financial papers, including proceeds, such as U.S. currency, which relate to the purchase, sale, shipment, distribution, handling, advertisement, use or manufacturing of goods bearing counterfeit marks;

(h) any and all sales tax records and reports of sales by Brandsway International, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated;

(i) any and all financial documents related to Brandsway International, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated, including, but not limited to, bank records, mortgage documents and income tax returns;

2

(j)   any and all electronic devices which are capable of
      analyzing, creating, displaying, converting or
      transmitting electronic or magnetic computer impulses
      or data, including computers, computer components,
      computer peripherals, work processing equipment,
      modems, monitors, printers, plotters, encryption
      circuit boards, optical scanners, external hard
      drives, digital video recorders and monitors, other
      computer related electronic devices, and wireless
      devices, such as cellular telephones and smart phones;

(k)   any computers, electronic media or wireless devices,
      such as cellular telephones and smart phones, that
      were or may have been used as a means to commit the
      offenses described above;

(l)   for any computer, computer hard drive, or other
      physical object upon which computer data can be
      recorded (hereinafter, "COMPUTER") that is called for
      by this warrant, or that might contain things
      otherwise called for by this warrant:

      •   evidence of who used, owned, or controlled the
          COMPUTER at the time the things described in this
          warrant were created, edited, or deleted, such as
          logs, registry entries, configuration files,
          saved usernames and passwords, documents,
          browsing history, user profiles, email, email
          contacts, "chat," instant messaging logs,
          photographs, and correspondence;

      •   evidence of software that would allow others to
          control the COMPUTER, such as viruses, Trojan
          horses, and other forms of malicious software, as
          well as evidence of the presence or absence of
          security software designed to detect malicious
          software;

      •   evidence of the lack of such malicious software;

      •   evidence of the attachment to the COMPUTER of
          other storage devices or similar containers for
          electronic evidence;

      •   evidence of counter-forensic programs (and
          associated data) that are designed to eliminate
          data from the COMPUTER;

3

- evidence of the times the COMPUTER was used;

- passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

- documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

- contextual information necessary to understand the evidence described in this attachment.

(m) records and things evidencing the use of the specific Internet Protocol addresses, including:

- routers, modems, and network equipment used to connect computers to the Internet;

- records of Internet Protocol addresses used;

- records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "materials," "records", "information" and "documents" include all of the described items of evidence, dated from 2008 to the present, in whatever form and by whatever means such materials, records, or documents, their drafts, or their modifications may have been created or stored.

4

## ATTACHMENT B

## CENTERPOINT BRANDS INCORPORATED

The following items, which constitute evidence, fruits and instrumentalities of violations of Title 18, United States Code, Sections 371 (Conspiracy to Commit an Offense Against the United States), 1341 (Mail Fraud), 1349 (Mail Fraud Conspiracy) and 2320 (Trafficking in Counterfeit Goods), may be seized from within the premises known and described as Centerpoint Brands Incorporated, 303 Smith Street, Farmingdale, New York, the persons of any owners, managers or employees of Centerpoint Brands Incorporated therein, and from any safes, lockers or closed containers therein, as well as any trucks on the company property bearing the company name or logo, any cargo that is consigned to Centerpoint Brands Incorporated and any containers on the property of Centerpoint Brands Incorporated by agents of Immigration and Customs Enforcement, Homeland Security Investigations, and any other federal law enforcement or task force officers assisting them, and the searchers may be accompanied by civilian industry representatives specifically for the purpose of identification of goods and packaging bearing counterfeit trademarks, and of materials used to manufacture or package such goods:

(a)     any and all records or documentation reflecting ownership of Centerpoint Brands Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated;

(b)     any and all documents, materials or devices relating to the importation, purchase, manufacture, sale, shipment, handling, or distribution of goods bearing counterfeit trademarks, as well as related packaging, labels, labeling and literature;

(c)     any and all quantities and forms of goods bearing counterfeit trademarks;

(d)     any and all documents relating to employees, customers, or suppliers of Centerpoint Brands Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Price Incorporated, which pertain to the manufacture or distribution of goods bearing counterfeit trademarks;

(e) any contracts, agreements, records and/or documentation of agreements made between Centerpoint Brands Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated with any other entity providing goods bearing counterfeit trademarks;

(f) any and all communication, in any form, received or sent by Centerpoint Brands Incorporated, Pardeep Malik, Hamant Mullick, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated to any individual or entity associated with the purchase, sale, shipment distribution, handling, use, manufacturing, or advertisement of goods bearing counterfeit marks;

(g) any and all transactional financial records for Centerpoint Brands Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated, including but not limited to, checks, cancelled checks, check registers, ledgers, bank statements, account statements, wire transfers, deposit items, credit card processing equipment, and any other financial papers, including proceeds, such as U.S. currency, which relate to the purchase, sale, shipment, distribution, handling, advertisement, use or manufacturing of goods bearing counterfeit marks;

(h) any and all sales tax records and reports of sales by Centerpoint Brands Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated;

(i) any and all financial documents related to Centerpoint Brands Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated, including, but not limited to, bank records, mortgage documents and income tax returns;

2

(j)   any and all electronic devices which are capable of
      analyzing, creating, displaying, converting or
      transmitting electronic or magnetic computer impulses
      or data, including computers, computer components,
      computer peripherals, work processing equipment,
      modems, monitors, printers, plotters, encryption
      circuit boards, optical scanners, external hard
      drives, digital video recorders and monitors, other
      computer related electronic devices, and wireless
      devices, such as cellular telephones and smart phones;

(k)   any computers, electronic media or wireless devices,
      such as cellular telephones and smart phones, that
      were or may have been used as a means to commit the
      offenses described above;

(1)   for any computer, computer hard drive, or other
      physical object upon which computer data can be
      recorded (hereinafter, "COMPUTER") that is called for
      by this warrant, or that might contain things
      otherwise called for by this warrant:

      •   evidence of who used, owned, or controlled the
          COMPUTER at the time the things described in this
          warrant were created, edited, or deleted, such as
          logs, registry entries, configuration files,
          saved usernames and passwords, documents,
          browsing history, user profiles, email, email
          contacts, "chat," instant messaging logs,
          photographs, and correspondence;

      •   evidence of software that would allow others to
          control the COMPUTER, such as viruses, Trojan
          horses, and other forms of malicious software, as
          well as evidence of the presence or absence of
          security software designed to detect malicious
          software;

      •   evidence of the lack of such malicious software;

      •   evidence of the attachment to the COMPUTER of
          other storage devices or similar containers for
          electronic evidence;

      •   evidence of counter-forensic programs (and
          associated data) that are designed to eliminate
          data from the COMPUTER;

3

- evidence of the times the COMPUTER was used;

- passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

- documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

- contextual information necessary to understand the evidence described in this attachment.

(m) records and things evidencing the use of the specific Internet Protocol addresses, including:

- routers, modems, and network equipment used to connect computers to the Internet;

- records of Internet Protocol addresses used;

- records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "materials," "records", "information" and "documents" include all of the described items of evidence, dated from 2008 to the present, in whatever form and by whatever means such materials, records, or documents, their drafts, or their modifications may have been created or stored.

## ATTACHMENT B

## CENTRAL SUPPLY INCORPORATED

The following items, which constitute evidence, fruits and instrumentalities of violations of Title 18, United States Code, Sections 371 (Conspiracy to Commit an Offense Against the United States), 1341 (Mail Fraud), 1349 (Mail Fraud Conspiracy) and 2320 (Trafficking in Counterfeit Goods), may be seized from within the premises known and described as Central Supply Incorporated, 4111 Glenwood Road, Brooklyn, New York, the persons of any owners, managers or employees of Central Supply Incorporated therein, and  from any safes, lockers or closed containers therein, as well as any trucks on the company property bearing the company name or logo, any cargo that is consigned to Central Supply Incorporated and any containers on the property of Central Supply Incorporated by agents of Immigration and Customs Enforcement, Homeland Security Investigations, and any other federal law enforcement or task force officers assisting them, and the searchers may be accompanied by civilian industry representatives specifically for the purpose of identification of goods and packaging bearing counterfeit trademarks, and of materials used to manufacture or package such goods:

(a)   any and all records or documentation reflecting ownership of Central Supply Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated;

(b)   any and all documents, materials or devices relating to the importation, purchase, manufacture, sale, shipment, handling, or distribution of goods bearing counterfeit trademarks, as well as related packaging, labels, labeling and literature;

(c)   any and all quantities and forms of goods bearing counterfeit trademarks;

(d)   any and all documents relating to employees, customers, or suppliers of Central Supply Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Price Incorporated, which pertain to the manufacture or distribution of goods bearing counterfeit trademarks;

(e) any contracts, agreements, records and/or documentation of agreements made between Central Supply Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated with any other entity providing goods bearing counterfeit trademarks;

(f) any and all communication, in any form, received or sent by Central Supply Incorporated, Pardeep Malik, Hamant Mullick, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated to any individual or entity associated with the purchase, sale, shipment distribution, handling, use, manufacturing, or advertisement of goods bearing counterfeit marks;

(g) any and all transactional financial records for Central Supply Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated, including but not limited to, checks, cancelled checks, check registers, ledgers, bank statements, account statements, wire transfers, deposit items, credit card processing equipment, and any other financial papers, including proceeds, such as U.S. currency, which relate to the purchase, sale, shipment, distribution, handling, advertisement, use or manufacturing of goods bearing counterfeit marks;

(h) any and all sales tax records and reports of sales by Central Supply Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated;

(i) any and all financial documents related to Central Supply Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated, including, but not limited to, bank records, mortgage documents and income tax returns;

2

(j)   any and all electronic devices which are capable of
      analyzing, creating, displaying, converting or
      transmitting electronic or magnetic computer impulses
      or data, including computers, computer components,
      computer peripherals, work processing equipment,
      modems, monitors, printers, plotters, encryption
      circuit boards, optical scanners, external hard
      drives, digital video recorders and monitors, other
      computer related electronic devices, and wireless
      devices, such as cellular telephones and smart phones;

(k)   any computers, electronic media or wireless devices,
      such as cellular telephones and smart phones, that
      were or may have been used as a means to commit the
      offenses described above;

(l)   for any computer, computer hard drive, or other
      physical object upon which computer data can be
      recorded (hereinafter, "COMPUTER") that is called for
      by this warrant, or that might contain things
      otherwise called for by this warrant:

      •   evidence of who used, owned, or controlled the
          COMPUTER at the time the things described in this
          warrant were created, edited, or deleted, such as
          logs, registry entries, configuration files,
          saved usernames and passwords, documents,
          browsing history, user profiles, email, email
          contacts, "chat," instant messaging logs,
          photographs, and correspondence;

      •   evidence of software that would allow others to
          control the COMPUTER, such as viruses, Trojan
          horses, and other forms of malicious software, as
          well as evidence of the presence or absence of
          security software designed to detect malicious
          software;

      •   evidence of the lack of such malicious software;

      •   evidence of the attachment to the COMPUTER of
          other storage devices or similar containers for
          electronic evidence;

      •   evidence of counter-forensic programs (and
          associated data) that are designed to eliminate
          data from the COMPUTER;

3

- evidence of the times the COMPUTER was used;

- passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

- documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

- contextual information necessary to understand the evidence described in this attachment.

(m) records and things evidencing the use of the specific Internet Protocol addresses, including:

- routers, modems, and network equipment used to connect computers to the Internet;

- records of Internet Protocol addresses used;

- records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "materials," "records", "information" and "documents" include all of the described items of evidence, dated from 2008 to the present, in whatever form and by whatever means such materials, records, or documents, their drafts, or their modifications may have been created or stored.

4

## ATTACHMENT B

### COAST TO COAST

The following items, which constitute evidence, fruits and instrumentalities of violations of Title 18, United States Code, Sections 371 (Conspiracy to Commit an Offense Against the United States), 1341 (Mail Fraud), 1349 (Mail Fraud Conspiracy) and 2320 (Trafficking in Counterfeit Goods), may be seized from within the premises known and described as Coast to Coast, 1058 Pacific Street, Brooklyn, New York, the persons of any owners, managers or employees of Coast to Coast therein, and  from any safes, lockers or closed containers therein, as well as any trucks on the company property bearing the company name or logo, any cargo that is consigned to Coast to Coast and any containers on the property of Coast to Coast by agents of Immigration and Customs Enforcement, Homeland Security Investigations, and any other federal law enforcement or task force officers assisting them, and the searchers may be accompanied by civilian industry representatives specifically for the purpose of identification of goods and packaging bearing counterfeit trademarks, and of materials used to manufacture or package such goods:

(a)   any and all records or documentation reflecting ownership of Coast to Coast, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated;

(b)   any and all documents, materials or devices relating to the importation, purchase, manufacture, sale, shipment, handling, or distribution of goods bearing counterfeit trademarks, as well as related packaging, labels, labeling and literature;

(c)   any and all quantities and forms of goods bearing counterfeit trademarks;

(d)   any and all documents relating to employees, customers, or suppliers of Coast to Coast, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Price Incorporated, which pertain to the manufacture or distribution of goods bearing counterfeit trademarks;

(e)   any contracts, agreements, records and/or
      documentation of agreements made between Coast to
      Coast, Best Price Traders NA Incorporated, Universal
      Price Incorporated and Glow Derma Incorporated with
      any other entity providing goods bearing counterfeit
      trademarks;

(f)   any and all communication, in any form, received or
      sent by Coast to Coast, Pardeep Malik, Hamant Mullick,
      Best Price Traders NA Incorporated, Universal Price
      Incorporated and Glow Derma Incorporated to any
      individual or entity associated with the purchase,
      sale, shipment distribution, handling, use,
      manufacturing, or advertisement of goods bearing
      counterfeit marks;

(g)   any and all transactional financial records for Coast
      to Coast, Best Price Traders NA Incorporated,
      Universal Price Incorporated and Glow Derma
      Incorporated, including but not limited to, checks,
      cancelled checks, check registers, ledgers, bank
      statements, account statements, wire transfers,
      deposit items, credit card processing equipment, and
      any other financial papers, including proceeds, such
      as U.S. currency, which relate to the purchase, sale,
      shipment, distribution, handling, advertisement, use
      or manufacturing of goods bearing counterfeit marks;

(h)   any and all sales tax records and reports of sales by
      Coast to Coast, Best Price Traders NA Incorporated,
      Universal Price Incorporated and Glow Derma
      Incorporated;

(i)   any and all financial documents related to Coast to
      Coast, Best Price Traders NA Incorporated, Universal
      Price Incorporated and Glow Derma Incorporated,
      including, but not limited to, bank records, mortgage
      documents and income tax returns;

2

(j)   any and all electronic devices which are capable of
      analyzing, creating, displaying, converting or
      transmitting electronic or magnetic computer impulses
      or data, including computers, computer components,
      computer peripherals, work processing equipment,
      modems, monitors, printers, plotters, encryption
      circuit boards, optical scanners, external hard
      drives, digital video recorders and monitors, other
      computer related electronic devices, and wireless
      devices, such as cellular telephones and smart phones;

(k)   any computers, electronic media or wireless devices,
      such as cellular telephones and smart phones, that
      were or may have been used as a means to commit the
      offenses described above;

(l)   for any computer, computer hard drive, or other
      physical object upon which computer data can be
      recorded (hereinafter, "COMPUTER") that is called for
      by this warrant, or that might contain things
      otherwise called for by this warrant:

      •   evidence of who used, owned, or controlled the
          COMPUTER at the time the things described in this
          warrant were created, edited, or deleted, such as
          logs, registry entries, configuration files,
          saved usernames and passwords, documents,
          browsing history, user profiles, email, email
          contacts, "chat," instant messaging logs,
          photographs, and correspondence;

      •   evidence of software that would allow others to
          control the COMPUTER, such as viruses, Trojan
          horses, and other forms of malicious software, as
          well as evidence of the presence or absence of
          security software designed to detect malicious
          software;

      •   evidence of the lack of such malicious software;

      •   evidence of the attachment to the COMPUTER of
          other storage devices or similar containers for
          electronic evidence;

      •   evidence of counter-forensic programs (and
          associated data) that are designed to eliminate
          data from the COMPUTER;

3

- evidence of the times the COMPUTER was used;

- passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

- documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

- contextual information necessary to understand the evidence described in this attachment.

(m) records and things evidencing the use of the specific Internet Protocol addresses, including:

- routers, modems, and network equipment used to connect computers to the Internet;

- records of Internet Protocol addresses used;

- records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "materials," "records", "information" and "documents" include all of the described items of evidence, dated from 2008 to the present, in whatever form and by whatever means such materials, records, or documents, their drafts, or their modifications may have been created or stored.

4

## ATTACHMENT B

### EXCEL WHOLESALE DISTRIBUTORS

The following items, which constitute evidence, fruits and instrumentalities of violations of Title 18, United States Code, Sections 371 (Conspiracy to Commit an Offense Against the United States), 1341 (Mail Fraud), 1349 (Mail Fraud Conspiracy) and 2320 (Trafficking in Counterfeit Goods), may be seized from within the premises known and described as Excel Wholesale Distributors, 15-13 132nd Street, College Point, New York, the persons of any owners, managers or employees of Excel Wholesale Distributors therein, and  from any safes, lockers or closed containers therein, as well as any trucks on the company property bearing the company name or logo, any cargo that is consigned to Excel Wholesale Distributors and any containers on the property of Excel Wholesale Distributors by agents of Immigration and Customs Enforcement, Homeland Security Investigations, and any other federal law enforcement or task force officers assisting them, and the searchers may be accompanied by civilian industry representatives specifically for the purpose of identification of goods and packaging bearing counterfeit trademarks, and of materials used to manufacture or package such goods:

(a) any and all records or documentation reflecting ownership of Excel Wholesale Distributors, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated;

(b) any and all documents, materials or devices relating to the importation, purchase, manufacture, sale, shipment, handling, or distribution of goods bearing counterfeit trademarks, as well as related packaging, labels, labeling and literature;

(c) any and all quantities and forms of goods bearing counterfeit trademarks;

(d) any and all documents relating to employees, customers, or suppliers of Excel Wholesale Distributors, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Price Incorporated, which pertain to the manufacture or distribution of goods bearing counterfeit trademarks;

(e) any contracts, agreements, records and/or documentation of agreements made between Excel Wholesale Distributors, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated with any other entity providing goods bearing counterfeit trademarks;

(f) any and all communication, in any form, received or sent by Excel Wholesale Distributors, Pardeep Malik, Hamant Mullick, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated to any individual or entity associated with the purchase, sale, shipment distribution, handling, use, manufacturing, or advertisement of goods bearing counterfeit marks;

(g) any and all transactional financial records for Excel Wholesale Distributors, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated, including but not limited to, checks, cancelled checks, check registers, ledgers, bank statements, account statements, wire transfers, deposit items, credit card processing equipment, and any other financial papers, including proceeds, such as U.S. currency, which relate to the purchase, sale, shipment, distribution, handling, advertisement, use or manufacturing of goods bearing counterfeit marks;

(h) any and all sales tax records and reports of sales by Excel Wholesale Distributors, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated;

(i) any and all financial documents related to Excel Wholesale Distributors, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated, including, but not limited to, bank records, mortgage documents and income tax returns;

2

(j)   any and all electronic devices which are capable of
      analyzing, creating, displaying, converting or
      transmitting electronic or magnetic computer impulses
      or data, including computers, computer components,
      computer peripherals, work processing equipment,
      modems, monitors, printers, plotters, encryption
      circuit boards, optical scanners, external hard
      drives, digital video recorders and monitors, other
      computer related electronic devices, and wireless
      devices, such as cellular telephones and smart phones;

(k)   any computers, electronic media or wireless devices,
      such as cellular telephones and smart phones, that
      were or may have been used as a means to commit the
      offenses described above;

(l)   for any computer, computer hard drive, or other
      physical object upon which computer data can be
      recorded (hereinafter, "COMPUTER") that is called for
      by this warrant, or that might contain things
      otherwise called for by this warrant:

      •   evidence of who used, owned, or controlled the
          COMPUTER at the time the things described in this
          warrant were created, edited, or deleted, such as
          logs, registry entries, configuration files,
          saved usernames and passwords, documents,
          browsing history, user profiles, email, email
          contacts, "chat," instant messaging logs,
          photographs, and correspondence;

      •   evidence of software that would allow others to
          control the COMPUTER, such as viruses, Trojan
          horses, and other forms of malicious software, as
          well as evidence of the presence or absence of
          security software designed to detect malicious
          software;

      •   evidence of the lack of such malicious software;

      •   evidence of the attachment to the COMPUTER of
          other storage devices or similar containers for
          electronic evidence;

      •   evidence of counter-forensic programs (and
          associated data) that are designed to eliminate
          data from the COMPUTER;

- evidence of the times the COMPUTER was used;

- passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

- documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

- contextual information necessary to understand the evidence described in this attachment.

(m)  records and things evidencing the use of the specific Internet Protocol addresses, including:

- routers, modems, and network equipment used to connect computers to the Internet;

- records of Internet Protocol addresses used;

- records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "materials," "records", "information" and "documents" include all of the described items of evidence, dated from 2008 to the present, in whatever form and by whatever means such materials, records, or documents, their drafts, or their modifications may have been created or stored.

**ATTACHMENT B**

**GENERAL MERCHANDISE WHOLESALE**

The following items, which constitute evidence, fruits and instrumentalities of violations of Title 18, United States Code, Sections 371 (Conspiracy to Commit an Offense Against the United States), 1341 (Mail Fraud), 1349 (Mail Fraud Conspiracy) and 2320 (Trafficking in Counterfeit Goods), may be seized from within the premises known and described as General Merchandise Wholesale, 130 Gazza Boulevard, Farmingdale, New York, the persons of any owners, managers or employees of General Merchandise Wholesale therein, and from any safes, lockers or closed containers therein, as well as any trucks on the company property bearing the company name or logo, any cargo that is consigned to General Merchandise Wholesale and any containers on the property of General Merchandise Wholesale by agents of Immigration and Customs Enforcement, Homeland Security Investigations, and any other federal law enforcement or task force officers assisting them, and the searchers may be accompanied by civilian industry representatives specifically for the purpose of identification of goods and packaging bearing counterfeit trademarks, and of materials used to manufacture or package such goods:

(a) any and all records or documentation reflecting ownership of General Merchandise Wholesale, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated;

(b) any and all documents, materials or devices relating to the importation, purchase, manufacture, sale, shipment, handling, or distribution of goods bearing counterfeit trademarks, as well as related packaging, labels, labeling and literature;

(c) any and all quantities and forms of goods bearing counterfeit trademarks;

(d) any and all documents relating to employees, customers, or suppliers of General Merchandise Wholesale, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Price Incorporated, which pertain to the manufacture or distribution of goods bearing counterfeit trademarks;

(e) any contracts, agreements, records and/or documentation of agreements made between General Merchandise Wholesale, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated with any other entity providing goods bearing counterfeit trademarks;

(f) any and all communication, in any form, received or sent by General Merchandise Wholesale, Pardeep Malik, Hamant Mullick, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated to any individual or entity associated with the purchase, sale, shipment distribution, handling, use, manufacturing, or advertisement of goods bearing counterfeit marks;

(g) any and all transactional financial records for General Merchandise Wholesale, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated, including but not limited to, checks, cancelled checks, check registers, ledgers, bank statements, account statements, wire transfers, deposit items, credit card processing equipment, and any other financial papers, including proceeds, such as U.S. currency, which relate to the purchase, sale, shipment, distribution, handling, advertisement, use or manufacturing of goods bearing counterfeit marks;

(h) any and all sales tax records and reports of sales by General Merchandise Wholesale, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated;

(i) any and all financial documents related to General Merchandise Wholesale, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated, including, but not limited to, bank records, mortgage documents and income tax returns;

(j)    any and all electronic devices which are capable of analyzing, creating, displaying, converting or transmitting electronic or magnetic computer impulses or data, including computers, computer components, computer peripherals, work processing equipment, modems, monitors, printers, plotters, encryption circuit boards, optical scanners, external hard drives, digital video recorders and monitors, other computer related electronic devices, and wireless devices, such as cellular telephones and smart phones;

(k)    any computers, electronic media or wireless devices, such as cellular telephones and smart phones, that were or may have been used as a means to commit the offenses described above;

(l)    for any computer, computer hard drive, or other physical object upon which computer data can be recorded (hereinafter, "COMPUTER") that is called for by this warrant, or that might contain things otherwise called for by this warrant:

- evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

- evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

- evidence of the lack of such malicious software;

- evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

- evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

3

- evidence of the times the COMPUTER was used;

- passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

- documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

- contextual information necessary to understand the evidence described in this attachment.

(m) records and things evidencing the use of the specific Internet Protocol addresses, including:

- routers, modems, and network equipment used to connect computers to the Internet;

- records of Internet Protocol addresses used;

- records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "materials," "records", "information" and "documents" include all of the described items of evidence, dated from 2008 to the present, in whatever form and by whatever means such materials, records, or documents, their drafts, or their modifications may have been created or stored.

4

## ATTACHMENT B

## I & A MERCHANDISE INCORPORATED

The following items, which constitute evidence, fruits and instrumentalities of violations of Title 18, United States Code, Sections 371 (Conspiracy to Commit an Offense Against the United States), 1341 (Mail Fraud), 1349 (Mail Fraud Conspiracy) and 2320 (Trafficking in Counterfeit Goods), may be seized from within the premises known and described as I & A Merchandise Incorporated, 141 47th Street, Brooklyn, New York, the persons of any owners, managers or employees of I & A Merchandise Incorporated therein, and  from any safes, lockers or closed containers therein, as well as any trucks on the company property bearing the company name or logo, any cargo that is consigned to I & A Merchandise Incorporated and any containers on the property of I & A Merchandise Incorporated by agents of Immigration and Customs Enforcement, Homeland Security Investigations, and any other federal law enforcement or task force officers assisting them, and the searchers may be accompanied by civilian industry representatives specifically for the purpose of identification of goods and packaging bearing counterfeit trademarks, and of materials used to manufacture or package such goods:

(a)  any and all records or documentation reflecting ownership of I & A Merchandise Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated;

(b)  any and all documents, materials or devices relating to the importation, purchase, manufacture, sale, shipment, handling, or distribution of goods bearing counterfeit trademarks, as well as related packaging, labels, labeling and literature;

(c)  any and all quantities and forms of goods bearing counterfeit trademarks;

(d)  any and all documents relating to employees, customers, or suppliers of I & A Merchandise Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Price Incorporated, which pertain to the manufacture or distribution of goods bearing counterfeit trademarks;

(e)  any contracts, agreements, records and/or
     documentation of agreements made between I & A
     Merchandise Incorporated, Best Price Traders NA
     Incorporated, Universal Price Incorporated and Glow
     Derma Incorporated with any other entity providing
     goods bearing counterfeit trademarks;

(f)  any and all communication, in any form, received or
     sent by I & A Merchandise Incorporated, Pardeep Malik,
     Hamant Mullick, Best Price Traders NA Incorporated,
     Universal Price Incorporated and Glow Derma
     Incorporated to any individual or entity associated
     with the purchase, sale, shipment distribution,
     handling, use, manufacturing, or advertisement of
     goods bearing counterfeit marks;

(g)  any and all transactional financial records for I & A
     Merchandise Incorporated, Best Price Traders NA
     Incorporated, Universal Price Incorporated and Glow
     Derma Incorporated, including but not limited to,
     checks, cancelled checks, check registers, ledgers,
     bank statements, account statements, wire transfers,
     deposit items, credit card processing equipment, and
     any other financial papers, including proceeds, such
     as U.S. currency, which relate to the purchase, sale,
     shipment, distribution, handling, advertisement, use
     or manufacturing of goods bearing counterfeit marks;

(h)  any and all sales tax records and reports of sales by
     I & A Merchandise Incorporated, Best Price Traders NA
     Incorporated, Universal Price Incorporated and Glow
     Derma Incorporated;

(i)  any and all financial documents related to I & A
     Merchandise Incorporated, Best Price Traders NA
     Incorporated, Universal Price Incorporated and Glow
     Derma Incorporated, including, but not limited to,
     bank records, mortgage documents and income tax
     returns;

2

(j)   any and all electronic devices which are capable of
      analyzing, creating, displaying, converting or
      transmitting electronic or magnetic computer impulses
      or data, including computers, computer components,
      computer peripherals, work processing equipment,
      modems, monitors, printers, plotters, encryption
      circuit boards, optical scanners, external hard
      drives, digital video recorders and monitors, other
      computer related electronic devices, and wireless
      devices, such as cellular telephones and smart phones;

(k)   any computers, electronic media or wireless devices,
      such as cellular telephones and smart phones, that
      were or may have been used as a means to commit the
      offenses described above;

(l)   for any computer, computer hard drive, or other
      physical object upon which computer data can be
      recorded (hereinafter, "COMPUTER") that is called for
      by this warrant, or that might contain things
      otherwise called for by this warrant:

      •   evidence of who used, owned, or controlled the
          COMPUTER at the time the things described in this
          warrant were created, edited, or deleted, such as
          logs, registry entries, configuration files,
          saved usernames and passwords, documents,
          browsing history, user profiles, email, email
          contacts, "chat," instant messaging logs,
          photographs, and correspondence;

      •   evidence of software that would allow others to
          control the COMPUTER, such as viruses, Trojan
          horses, and other forms of malicious software, as
          well as evidence of the presence or absence of
          security software designed to detect malicious
          software;

      •   evidence of the lack of such malicious software;

      •   evidence of the attachment to the COMPUTER of
          other storage devices or similar containers for
          electronic evidence;

      •   evidence of counter-forensic programs (and
          associated data) that are designed to eliminate
          data from the COMPUTER;

3

- evidence of the times the COMPUTER was used;

- passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

- documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

- contextual information necessary to understand the evidence described in this attachment.

(m)   records and things evidencing the use of the specific Internet Protocol addresses, including:

- routers, modems, and network equipment used to connect computers to the Internet;

- records of Internet Protocol addresses used;

- records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "materials," "records", "information" and "documents" include all of the described items of evidence, dated from 2008 to the present, in whatever form and by whatever means such materials, records, or documents, their drafts, or their modifications may have been created or stored.

4

## ATTACHMENT B

## NPI INCORPORATED

The following items, which constitute evidence, fruits and instrumentalities of violations of Title 18, United States Code, Sections 371 (Conspiracy to Commit an Offense Against the United States), 1341 (Mail Fraud), 1349 (Mail Fraud Conspiracy) and 2320 (Trafficking in Counterfeit Goods), may be seized from within the premises known and described as NPI Incorporated, 68 33rd Street, Brooklyn, New York, the persons of any owners, managers or employees of NPI Incorporated therein, and from any safes, lockers or closed containers therein, as well as any trucks on the company property bearing the company name or logo, any cargo that is consigned to NPI Incorporated and any containers on the property of NPI Incorporated by agents of Immigration and Customs Enforcement, Homeland Security Investigations, and any other federal law enforcement or task force officers assisting them, and the searchers may be accompanied by civilian industry representatives specifically for the purpose of identification of goods and packaging bearing counterfeit trademarks, and of materials used to manufacture or package such goods:

(a) any and all records or documentation reflecting ownership of NPI Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated;

(b) any and all documents, materials or devices relating to the importation, purchase, manufacture, sale, shipment, handling, or distribution of goods bearing counterfeit trademarks, as well as related packaging, labels, labeling and literature;

(c) any and all quantities and forms of goods bearing counterfeit trademarks;

(d) any and all documents relating to employees, customers, or suppliers of NPI Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Price Incorporated, which pertain to the manufacture or distribution of goods bearing counterfeit trademarks;

(e)   any contracts, agreements, records and/or
      documentation of agreements made between NPI
      Incorporated, Best Price Traders NA Incorporated,
      Universal Price Incorporated and Glow Derma
      Incorporated with any other entity providing goods
      bearing counterfeit trademarks;

(f)   any and all communication, in any form, received or
      sent by NPI Incorporated, Pardeep Malik, Hamant
      Mullick, Best Price Traders NA Incorporated, Universal
      Price Incorporated and Glow Derma Incorporated to any
      individual or entity associated with the purchase,
      sale, shipment distribution, handling, use,
      manufacturing, or advertisement of goods bearing
      counterfeit marks;

(g)   any and all transactional financial records for NPI
      Incorporated, Best Price Traders NA Incorporated,
      Universal Price Incorporated and Glow Derma
      Incorporated, including but not limited to, checks,
      cancelled checks, check registers, ledgers, bank
      statements, account statements, wire transfers,
      deposit items, credit card processing equipment, and
      any other financial papers, including proceeds, such
      as U.S. currency, which relate to the purchase, sale,
      shipment, distribution, handling, advertisement, use
      or manufacturing of goods bearing counterfeit marks;

(h)   any and all sales tax records and reports of sales by
      NPI Incorporated, Best Price Traders NA Incorporated,
      Universal Price Incorporated and Glow Derma
      Incorporated;

(i)   any and all financial documents related to NPI
      Incorporated, Best Price Traders NA Incorporated,
      Universal Price Incorporated and Glow Derma
      Incorporated, including, but not limited to, bank
      records, mortgage documents and income tax returns;

2

(j)   any and all electronic devices which are capable of
      analyzing, creating, displaying, converting or
      transmitting electronic or magnetic computer impulses
      or data, including computers, computer components,
      computer peripherals, work processing equipment,
      modems, monitors, printers, plotters, encryption
      circuit boards, optical scanners, external hard
      drives, digital video recorders and monitors, other
      computer related electronic devices, and wireless
      devices, such as cellular telephones and smart phones;

(k)   any computers, electronic media or wireless devices,
      such as cellular telephones and smart phones, that
      were or may have been used as a means to commit the
      offenses described above;

(l)   for any computer, computer hard drive, or other
      physical object upon which computer data can be
      recorded (hereinafter, "COMPUTER") that is called for
      by this warrant, or that might contain things
      otherwise called for by this warrant:

      •   evidence of who used, owned, or controlled the
          COMPUTER at the time the things described in this
          warrant were created, edited, or deleted, such as
          logs, registry entries, configuration files,
          saved usernames and passwords, documents,
          browsing history, user profiles, email, email
          contacts, "chat," instant messaging logs,
          photographs, and correspondence;

      •   evidence of software that would allow others to
          control the COMPUTER, such as viruses, Trojan
          horses, and other forms of malicious software, as
          well as evidence of the presence or absence of
          security software designed to detect malicious
          software;

      •   evidence of the lack of such malicious software;

      •   evidence of the attachment to the COMPUTER of
          other storage devices or similar containers for
          electronic evidence;

      •   evidence of counter-forensic programs (and
          associated data) that are designed to eliminate
          data from the COMPUTER;

3

- evidence of the times the COMPUTER was used;

- passwords, encryption keys, and other access
devices that may be necessary to access the
COMPUTER;

- documentation and manuals that may be necessary
to access the COMPUTER or to conduct a forensic
examination of the COMPUTER;

- contextual information necessary to understand
the evidence described in this attachment.

(m) records and things evidencing the use of the specific
Internet Protocol addresses, including:

- routers, modems, and network equipment used to
connect computers to the Internet;

- records of Internet Protocol addresses used;

- records of Internet activity, including firewall
logs, caches, browser history and cookies,
"bookmarked" or "favorite" web pages, search terms
that the user entered into any Internet search
engine, and records of user-typed web addresses.

As used above, the terms "materials," "records", "information" and
"documents" include all of the described items of evidence, dated
from 2008 to the present, in whatever form and by whatever means
such materials, records, or documents, their drafts, or their
modifications may have been created or stored.

4

## ATTACHMENT B

### PRICE MASTER INCORPORATED

The following items, which constitute evidence, fruits and instrumentalities of violations of Title 18, United States Code, Sections 371 (Conspiracy to Commit an Offense Against the United States), 1341 (Mail Fraud), 1349 (Mail Fraud Conspiracy) and 2320 (Trafficking in Counterfeit Goods), may be seized from within the premises known and described as Price Master Incorporated, 57-07 31st Avenue, Woodside, New York, the persons of any owners, managers or employees of Price Master Incorporated therein, and from any safes, lockers or closed containers therein, as well as any trucks on the company property bearing the company name or logo, any cargo that is consigned to Price Master Incorporated and any containers on the property of Price Master Incorporated by agents of Immigration and Customs Enforcement, Homeland Security Investigations, and any other federal law enforcement or task force officers assisting them, and the searchers may be accompanied by civilian industry representatives specifically for the purpose of identification of goods and packaging bearing counterfeit trademarks, and of materials used to manufacture or package such goods:

(a)   any and all records or documentation reflecting ownership of Price Master Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated;

(b)   any and all documents, materials or devices relating to the importation, purchase, manufacture, sale, shipment, handling, or distribution of goods bearing counterfeit trademarks, as well as related packaging, labels, labeling and literature;

(c)   any and all quantities and forms of goods bearing counterfeit trademarks;

(d)   any and all documents relating to employees, customers, or suppliers of Price Master Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Price Incorporated, which pertain to the manufacture or distribution of goods bearing counterfeit trademarks;

(e) any contracts, agreements, records and/or documentation of agreements made between Price Master Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated with any other entity providing goods bearing counterfeit trademarks;

(f) any and all communication, in any form, received or sent by Price Master Incorporated, Pardeep Malik, Hamant Mullick, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated to any individual or entity associated with the purchase, sale, shipment distribution, handling, use, manufacturing, or advertisement of goods bearing counterfeit marks;

(g) any and all transactional financial records for Price Master Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated, including but not limited to, checks, cancelled checks, check registers, ledgers, bank statements, account statements, wire transfers, deposit items, credit card processing equipment, and any other financial papers, including proceeds, such as U.S. currency, which relate to the purchase, sale, shipment, distribution, handling, advertisement, use or manufacturing of goods bearing counterfeit marks;

(h) any and all sales tax records and reports of sales by Price Master Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated;

(i) any and all financial documents related to Price Master Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated, including, but not limited to, bank records, mortgage documents and income tax returns;

2

(j)   any and all electronic devices which are capable of
      analyzing, creating, displaying, converting or
      transmitting electronic or magnetic computer impulses
      or data, including computers, computer components,
      computer peripherals, work processing equipment,
      modems, monitors, printers, plotters, encryption
      circuit boards, optical scanners, external hard
      drives, digital video recorders and monitors, other
      computer related electronic devices, and wireless
      devices, such as cellular telephones and smart phones;

(k)   any computers, electronic media or wireless devices,
      such as cellular telephones and smart phones, that
      were or may have been used as a means to commit the
      offenses described above;

(l)   for any computer, computer hard drive, or other
      physical object upon which computer data can be
      recorded (hereinafter, "COMPUTER") that is called for
      by this warrant, or that might contain things
      otherwise called for by this warrant:

      •   evidence of who used, owned, or controlled the
          COMPUTER at the time the things described in this
          warrant were created, edited, or deleted, such as
          logs, registry entries, configuration files,
          saved usernames and passwords, documents,
          browsing history, user profiles, email, email
          contacts, "chat," instant messaging logs,
          photographs, and correspondence;

      •   evidence of software that would allow others to
          control the COMPUTER, such as viruses, Trojan
          horses, and other forms of malicious software, as
          well as evidence of the presence or absence of
          security software designed to detect malicious
          software;

      •   evidence of the lack of such malicious software;

      •   evidence of the attachment to the COMPUTER of
          other storage devices or similar containers for
          electronic evidence;

      •   evidence of counter-forensic programs (and
          associated data) that are designed to eliminate
          data from the COMPUTER;

3

- evidence of the times the COMPUTER was used;

- passwords, encryption keys, and other access
  devices that may be necessary to access the
  COMPUTER;

- documentation and manuals that may be necessary
  to access the COMPUTER or to conduct a forensic
  examination of the COMPUTER;

- contextual information necessary to understand
  the evidence described in this attachment.

(m)   records and things evidencing the use of the specific
      Internet Protocol addresses, including:

- routers, modems, and network equipment used to
  connect computers to the Internet;

- records of Internet Protocol addresses used;

- records of Internet activity, including firewall
  logs, caches, browser history and cookies,
  "bookmarked" or "favorite" web pages, search terms
  that the user entered into any Internet search
  engine, and records of user-typed web addresses.

As used above, the terms "materials," "records", "information" and
"documents" include all of the described items of evidence, dated
from 2008 to the present, in whatever form and by whatever means
such materials, records, or documents, their drafts, or their
modifications may have been created or stored.

4

**ATTACHMENT B**

**PRIDE PRODUCTS CORPORATION**

The following items, which constitute evidence, fruits and instrumentalities of violations of Title 18, United States Code, Sections 371 (Conspiracy to Commit an Offense Against the United States), 1341 (Mail Fraud), 1349 (Mail Fraud Conspiracy) and 2320 (Trafficking in Counterfeit Goods), may be seized from within the premises known and described as Pride Products Corporation, 4333 Veterans Memorial Highway, Ronkonkoma, New York, the persons of any owners, managers or employees of Pride Products Corporation therein, and  from any safes, lockers or closed containers therein, as well as any trucks on the company property bearing the company name or logo, any cargo that is consigned to Pride Products Corporation and any containers on the property of Pride Products Corporation by agents of Immigration and Customs Enforcement, Homeland Security Investigations, and any other federal law enforcement or task force officers assisting them, and the searchers may be accompanied by civilian industry representatives specifically for the purpose of identification of goods and packaging bearing counterfeit trademarks, and of materials used to manufacture or package such goods:

(a)   any and all records or documentation reflecting ownership of Pride Products Corporation, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated;

(b)   any and all documents, materials or devices relating to the importation, purchase, manufacture, sale, shipment, handling, or distribution of goods bearing counterfeit trademarks, as well as related packaging, labels, labeling and literature;

(c)   any and all quantities and forms of goods bearing counterfeit trademarks;

(d)   any and all documents relating to employees, customers, or suppliers of Pride Products Corporation, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Price Incorporated, which pertain to the manufacture or distribution of goods bearing counterfeit trademarks;

(e)   any contracts, agreements, records and/or documentation of agreements made between Pride Products Corporation, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated with any other entity providing goods bearing counterfeit trademarks;

(f)   any and all communication, in any form, received or sent by Pride Products Corporation, Pardeep Malik, Hamant Mullick, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated to any individual or entity associated with the purchase, sale, shipment distribution, handling, use, manufacturing, or advertisement of goods bearing counterfeit marks;

(g)   any and all transactional financial records for Pride Products Corporation, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated, including but not limited to, checks, cancelled checks, check registers, ledgers, bank statements, account statements, wire transfers, deposit items, credit card processing equipment, and any other financial papers, including proceeds, such as U.S. currency, which relate to the purchase, sale, shipment, distribution, handling, advertisement, use or manufacturing of goods bearing counterfeit marks;

(h)   any and all sales tax records and reports of sales by Pride Products Corporation, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated;

(i)   any and all financial documents related to Pride Products Corporation, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated, including, but not limited to, bank records, mortgage documents and income tax returns;

2

(j)   any and all electronic devices which are capable of analyzing, creating, displaying, converting or transmitting electronic or magnetic computer impulses or data, including computers, computer components, computer peripherals, work processing equipment, modems, monitors, printers, plotters, encryption circuit boards, optical scanners, external hard drives, digital video recorders and monitors, other computer related electronic devices, and wireless devices, such as cellular telephones and smart phones;

(k)   any computers, electronic media or wireless devices, such as cellular telephones and smart phones, that were or may have been used as a means to commit the offenses described above;

(l)   for any computer, computer hard drive, or other physical object upon which computer data can be recorded (hereinafter, "COMPUTER") that is called for by this warrant, or that might contain things otherwise called for by this warrant:

- evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

- evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

- evidence of the lack of such malicious software;

- evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

- evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

3

- evidence of the times the COMPUTER was used;

- passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

- documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

- contextual information necessary to understand the evidence described in this attachment.

(m) records and things evidencing the use of the specific Internet Protocol addresses, including:

- routers, modems, and network equipment used to connect computers to the Internet;

- records of Internet Protocol addresses used;

- records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "materials," "records", "information" and "documents" include all of the described items of evidence, dated from 2008 to the present, in whatever form and by whatever means such materials, records, or documents, their drafts, or their modifications may have been created or stored.

4

**ATTACHMENT B**

**SHAH DISTRIBUTORS INCORPORATED**

The following items, which constitute evidence, fruits and instrumentalities of violations of Title 18, United States Code, Sections 371 (Conspiracy to Commit an Offense Against the United States), 1341 (Mail Fraud), 1349 (Mail Fraud Conspiracy) and 2320 (Trafficking in Counterfeit Goods), may be seized from within the premises known and described as Shah Distributors Incorporated, 47 Roselle Street, Mineola, New York, the persons of any owners, managers or employees of Shah Distributors Incorporated therein, and  from any safes, lockers or closed containers therein, as well as any trucks on the company property bearing the company name or logo, any cargo that is consigned to Shah Distributors Incorporated and any containers on the property of Shah Distributors Incorporated by agents of Immigration and Customs Enforcement, Homeland Security Investigations, and any other federal law enforcement or task force officers assisting them, and the searchers may be accompanied by civilian industry representatives specifically for the purpose of identification of goods and packaging bearing counterfeit trademarks, and of materials used to manufacture or package such goods:

    (a)   any and all records or documentation reflecting ownership of Shah Distributors Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated;

    (b)   any and all documents, materials or devices relating to the importation, purchase, manufacture, sale, shipment, handling, or distribution of goods bearing counterfeit trademarks, as well as related packaging, labels, labeling and literature;

    (c)   any and all quantities and forms of goods bearing counterfeit trademarks;

    (d)   any and all documents relating to employees, customers, or suppliers of Shah Distributors Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Price Incorporated, which pertain to the manufacture or distribution of goods bearing counterfeit trademarks;

(e)   any contracts, agreements, records and/or documentation of agreements made between Shah Distributors Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated with any other entity providing goods bearing counterfeit trademarks;

(f)   any and all communication, in any form, received or sent by Shah Distributors Incorporated, Pardeep Malik, Hamant Mullick, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated to any individual or entity associated with the purchase, sale, shipment distribution, handling, use, manufacturing, or advertisement of goods bearing counterfeit marks;

(g)   any and all transactional financial records for Shah Distributors Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated, including but not limited to, checks, cancelled checks, check registers, ledgers, bank statements, account statements, wire transfers, deposit items, credit card processing equipment, and any other financial papers, including proceeds, such as U.S. currency, which relate to the purchase, sale, shipment, distribution, handling, advertisement, use or manufacturing of goods bearing counterfeit marks;

(h)   any and all sales tax records and reports of sales by Shah Distributors Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated;

(i)   any and all financial documents related to Shah Distributors Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated, including, but not limited to, bank records, mortgage documents and income tax returns;

(j)   any and all electronic devices which are capable of
      analyzing, creating, displaying, converting or
      transmitting electronic or magnetic computer impulses
      or data, including computers, computer components,
      computer peripherals, work processing equipment,
      modems, monitors, printers, plotters, encryption
      circuit boards, optical scanners, external hard
      drives, digital video recorders and monitors, other
      computer related electronic devices, and wireless
      devices, such as cellular telephones and smart phones;

(k)   any computers, electronic media or wireless devices,
      such as cellular telephones and smart phones, that
      were or may have been used as a means to commit the
      offenses described above;

(l)   for any computer, computer hard drive, or other
      physical object upon which computer data can be
      recorded (hereinafter, "COMPUTER") that is called for
      by this warrant, or that might contain things
      otherwise called for by this warrant:

      •   evidence of who used, owned, or controlled the
          COMPUTER at the time the things described in this
          warrant were created, edited, or deleted, such as
          logs, registry entries, configuration files,
          saved usernames and passwords, documents,
          browsing history, user profiles, email, email
          contacts, "chat," instant messaging logs,
          photographs, and correspondence;

      •   evidence of software that would allow others to
          control the COMPUTER, such as viruses, Trojan
          horses, and other forms of malicious software, as
          well as evidence of the presence or absence of
          security software designed to detect malicious
          software;

      •   evidence of the lack of such malicious software;

      •   evidence of the attachment to the COMPUTER of
          other storage devices or similar containers for
          electronic evidence;

      •   evidence of counter-forensic programs (and
          associated data) that are designed to eliminate
          data from the COMPUTER;

3

- evidence of the times the COMPUTER was used;

- passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

- documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

- contextual information necessary to understand the evidence described in this attachment.

(m) records and things evidencing the use of the specific Internet Protocol addresses, including:

- routers, modems, and network equipment used to connect computers to the Internet;

- records of Internet Protocol addresses used;

- records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "materials," "records", "information" and "documents" include all of the described items of evidence, dated from 2008 to the present, in whatever form and by whatever means such materials, records, or documents, their drafts, or their modifications may have been created or stored.

4

## ATTACHMENT B

## TOP CHOICE TRADING INCORPORATED

The following items, which constitute evidence, fruits and instrumentalities of violations of Title 18, United States Code, Sections 371 (Conspiracy to Commit an Offense Against the United States), 1341 (Mail Fraud), 1349 (Mail Fraud Conspiracy) and 2320 (Trafficking in Counterfeit Goods), may be seized from within the premises known and described as Top Choice Trading Incorporated, 19-40 Flushing Avenue, Ridgewood, New York, the persons of any owners, managers or employees of Top Choice Trading Incorporated therein, and  from any safes, lockers or closed containers therein, as well as any trucks on the company property bearing the company name or logo, any cargo that is consigned to Top Choice Trading Incorporated and any containers on the property of Top Choice Trading Incorporated by agents of Immigration and Customs Enforcement, Homeland Security Investigations, and any other federal law enforcement or task force officers assisting them, and the searchers may be accompanied by civilian industry representatives specifically for the purpose of identification of goods and packaging bearing counterfeit trademarks, and of materials used to manufacture or package such goods:

(a)   any and all records or documentation reflecting ownership of Top Choice Trading Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated;

(b)   any and all documents, materials or devices relating to the importation, purchase, manufacture, sale, shipment, handling, or distribution of goods bearing counterfeit trademarks, as well as related packaging, labels, labeling and literature;

(c)   any and all quantities and forms of goods bearing counterfeit trademarks;

(d)   any and all documents relating to employees, customers, or suppliers of Top Choice Trading Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Price Incorporated, which pertain to the manufacture or distribution of goods bearing counterfeit trademarks;

(e)   any contracts, agreements, records and/or
      documentation of agreements made between Top Choice
      Trading Incorporated, Best Price Traders NA
      Incorporated, Universal Price Incorporated and Glow
      Derma Incorporated with any other entity providing
      goods bearing counterfeit trademarks;

(f)   any and all communication, in any form, received or
      sent by Top Choice Trading Incorporated, Pardeep
      Malik, Hamant Mullick, Best Price Traders NA
      Incorporated, Universal Price Incorporated and Glow
      Derma Incorporated to any individual or entity
      associated with the purchase, sale, shipment
      distribution, handling, use, manufacturing, or
      advertisement of goods bearing counterfeit marks;

(g)   any and all transactional financial records for Top
      Choice Trading Incorporated, Best Price Traders NA
      Incorporated, Universal Price Incorporated and Glow
      Derma Incorporated, including but not limited to,
      checks, cancelled checks, check registers, ledgers,
      bank statements, account statements, wire transfers,
      deposit items, credit card processing equipment, and
      any other financial papers, including proceeds, such
      as U.S. currency, which relate to the purchase, sale,
      shipment, distribution, handling, advertisement, use
      or manufacturing of goods bearing counterfeit marks;

(h)   any and all sales tax records and reports of sales by
      Top Choice Trading Incorporated, Best Price Traders NA
      Incorporated, Universal Price Incorporated and Glow
      Derma Incorporated;

(i)   any and all financial documents related to Top Choice
      Trading Incorporated, Best Price Traders NA
      Incorporated, Universal Price Incorporated and Glow
      Derma Incorporated, including, but not limited to,
      bank records, mortgage documents and income tax
      returns;

(j)   any and all electronic devices which are capable of
      analyzing, creating, displaying, converting or
      transmitting electronic or magnetic computer impulses
      or data, including computers, computer components,
      computer peripherals, work processing equipment,
      modems, monitors, printers, plotters, encryption
      circuit boards, optical scanners, external hard
      drives, digital video recorders and monitors, other
      computer related electronic devices, and wireless
      devices, such as cellular telephones and smart phones;

(k)   any computers, electronic media or wireless devices,
      such as cellular telephones and smart phones, that
      were or may have been used as a means to commit the
      offenses described above;

(1)   for any computer, computer hard drive, or other
      physical object upon which computer data can be
      recorded (hereinafter, "COMPUTER") that is called for
      by this warrant, or that might contain things
      otherwise called for by this warrant:

      •    evidence of who used, owned, or controlled the
           COMPUTER at the time the things described in this
           warrant were created, edited, or deleted, such as
           logs, registry entries, configuration files,
           saved usernames and passwords, documents,
           browsing history, user profiles, email, email
           contacts, "chat," instant messaging logs,
           photographs, and correspondence;

      •    evidence of software that would allow others to
           control the COMPUTER, such as viruses, Trojan
           horses, and other forms of malicious software, as
           well as evidence of the presence or absence of
           security software designed to detect malicious
           software;

      •    evidence of the lack of such malicious software;

      •    evidence of the attachment to the COMPUTER of
           other storage devices or similar containers for
           electronic evidence;

      •    evidence of counter-forensic programs (and
           associated data) that are designed to eliminate
           data from the COMPUTER;

3

- evidence of the times the COMPUTER was used;

- passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

- documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

- contextual information necessary to understand the evidence described in this attachment.

(m) records and things evidencing the use of the specific Internet Protocol addresses, including:

- routers, modems, and network equipment used to connect computers to the Internet;

- records of Internet Protocol addresses used;

- records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "materials," "records", "information" and "documents" include all of the described items of evidence, dated from 2008 to the present, in whatever form and by whatever means such materials, records, or documents, their drafts, or their modifications may have been created or stored.

4

ATTACHMENT C

Case 2:14-mj-00685-WDW Document 1 Filed 07/24/14 Page 155 of 172 PageID #: 155
Case 2:14-mj-00290-WDW Document 32-5 Filed 07/07/14 Page 2 of 11 PageID #: 152
Case 2:14-mj-00290-WDW Document 1 Filed 03/28/14 Page 1 of 10 PageID #: 1

CPK:EW

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

PARDEEP MALIK and
HAMANT MULLICK,

Defendants.

- - - - - - - - - - - - - - - - X

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

☆   MAR 28 2014   ★

SUBMITTED UNDER SEAL LONG ISLAND OFFICE

COMPLAINT & AFFIDAVIT
IN SUPPORT OF
ARREST WARRANTS

(18 U.S.C. § 2320(a)(1);
18 U.S.C. § 2320(a)(2))

# 14-0290M

EASTERN DISTRICT OF NEW YORK, SS:

Richard B. Branda, being duly sworn, deposes and says that
he is a Special Agent with the Department of Homeland Security,
Homeland Security Investigations ("HSI") and its predecessor
agencies and have been so employed since 1998. Immigration and Customs
Enforcement, Homeland Security Investigations, duly appointed
according to law and acting as such.

In or about and between January 2011 and March 2014, within
the Eastern District of New York and elsewhere, the defendants PARDEEP
MALIK and HAMANT MULLICK, together with others, did knowingly and
intentionally conspire: (i) to traffic in goods knowingly using a
counterfeit mark on and in connection with such goods; and (ii) to
traffic in labels, stickers, wrappers and packaging, knowing that
a counterfeit mark had been applied thereto, the use of which was
likely to cause confusion, to cause mistake, and to deceive.

(Title 18, United States Code, Sections 2320(a)(1) and
2320(a)(2))

Case 2:14-mj-00685-WDW Document 1 Filed 07/24/14 Page 156 of 172 PageID #: 156
Case 2:14-mj-00290-WDW Document 32-5 Filed 07/07/14 Page 3 of 11 PageID #: 153
Case 2:14-mj-00290-WDW Document 1 Filed 03/28/14 Page 2 of 10 PageID #: 2

The source of your deponent's information and the grounds for his belief are as follows:[1]/

1. I am a Special Agent with Department of Homeland Security, Homeland Security Investigations ("HSI") and its predecessor agencies and have been so employed since 1998. Since becoming a Special Agent with HSI, I have participated in numerous investigations of trafficking in counterfeit goods and counterfeit labels and packaging, violations of Title 18, United States Code, Sections 2320(a)(1) and 2320(a)(2) respectively. I have conducted or participated in physical surveillance, the introduction of undercover agents and confidential informants, the execution of search warrants, debriefings of informants and other witnesses, and reviews of taped conversations, videos, and bank and other records.
Through my training, education and experience, I have become familiar with the manner in which counterfeit goods and counterfeit labels and packaging are transported, stored, and sold, the methods of payments for such goods, and how the proceeds from the sale of counterfeit goods and counterfeit labels and packaging are maintained. The information in this affidavit is based upon knowledge gained from my own involvement in a joint investigation by HSI, the Federal Bureau of Investigation ("FBI") and the Nassau County District Attorney's Office ("NCDA") Investigations Squad, upon

---

[1] Because the purpose of this affidavit is to set forth only those facts necessary to establish probable cause, I have not set forth every fact and circumstance of which I am aware.

Case 2:14-mj-00685-WDW    Document 1    Filed 07/24/14    Page 157 of 172 PageID #:457
Case 2:14-mj-00290-WDW    Document 32-5    Filed 07/07/14    Page 4 of 172 PageID #:457
Case 2:14-mj-00290-WDW    Document 1    Filed 03/28/14    Page 3 of 10 PageID #: 3

conversations with other law enforcement officers, and upon my review
of records collected in the investigation.

PARDEEP MALIK & GLOW DERMA, INC.

II.    According to the New York State (NYS) Department of
State, Glow Derma, Incorporated ("Glow Derma") is a domestic business
corporation formed on October 7, 2009.  The defendant PARDEEP MALIK
is listed as the Chief Executive Officer, at 83-17 241st Street,
Bellerose, New York 11426, and that same address is listed as both
the principal executive office and the place for service of process.

The defendant PARDEEP MALIK has also filed recently with United
States Customs and Border Protection at least two Powers of Attorney
appointing a customs house broker for Glow Derma, one in 2013 and
one in 2014.

III.  On March 6, 2014, pursuant to search warrants issued
on March 5 by the Honorable Judge Jerald S. Carter of New York State
Supreme Court, Nassau County, NCDA investigators and other law
enforcement officers searched 12B Filmore Place, Freeport, New York,
("Freeport Location") and 3535 Lawson Boulevard, Oceanside, New York,
("Oceanside Lawson Facility") both locations associated with Glow
Derma. Pardeep Malik is the leasee of both the Freeport Location
and the Oceanside Facility. On February 27, 2014, NCDA investigators
stopped a van which had stopped at both the Freeport and Oceanside
locations, where boxes were loaded and unloaded from the van.  When

Case 2:14-mj-00685-WDW   Document 1   Filed 07/24/14   Page 158 of 172 PageID #: 158
Case 2:14-mj-00290-WDW   Document 32-5   Filed 07/07/14   Page 5 of 11 PageID #: 155
Case 2:14-mj-00290-WDW   Document 1   Filed 03/28/14   Page 4 of 10 PageID #: 4

stopped, the van contained jars bearing counterfeit Vicks® Vaporub®[2] marks and counterfeit Vaseline®[3] marks.  The van was registered to Glow Derma, and the driver told NCDA investigators that he worked for the defendant PARDEEP MALIK and that both the Freeport and Oceanside locations were Glow Derma facilities.

IV.  During the searches of the Freeport Location and the Oceanside Lawson Facility, NCDA investigators seized hundreds of thousands of jars, some full and some empty, bearing counterfeit Vicks® VapoRub® marks and counterfeit Vaseline® marks, thousands of bottles, some full and some empty bearing counterfeit Johnson's Baby Oil and Baby Lotion marks, and sanitary pads bearing counterfeit Always®[4] marks.  Officials with the Proctor & Gamble Corporation, which produces Vicks® Vaporub® and Always® sanitary pads, Conopco, Incorporated (dba Unilever), which produces Vaseline®, and Johnson & Johnson, which produces Johnson's Baby Oil and Baby Lotion, confirmed that the marks on the seized goods were counterfeit. Investigators seized machinery, chemicals and compounds, and

---

[2]    "Vicks," registration number 4251567, is a word mark registered by the Proctor and Gamble Corporation ("P&G") on the principal register of the United States Patent and Trademark Office for use with cold medicine.  "Vaporub," registration number 3449185, is a word mark registered by P&G on the principal register of the USPTO for use with cold medicine.

[3]    "Vaseline," registration number 4248617, is a word mark registered by Conopco, Inc. (dba Unilever) on the principal register of the USPTO for use with petroleum jelly.

[4]    "Always," registration number 4458269, is a word mark registered by P&G on the principal register of the USPTO for use with feminine

Case 2:14-mj-00685-WDW   Document 1   Filed 07/24/14   Page 159 of 172 PageID #: 159
Case 2:14-mj-00290-WDW   Document 32-5   Filed 07/07/14   Page 6 of 11 PageID #: 156
Case 2:14-mj-00290-WDW   Document 1   Filed 03/28/14   Page 5 of 10 PageID #: 5

materials used to manufacture and produce these items on site, including strips of stickers and labels, not yet affixed to jars or bottles or pads, bearing counterfeit marks. Investigators seized invoices and other financial records indicating that Glow Derma had been selling these products to wholesale distributors across the United States since at least 2011.

V.    NCDA investigators interviewed an individual present at the Oceanside Lawson Facility who claimed to be an employee of Glow Derma and told them that defendant PARDEEP MALIK was the owner of the business.

VI.    Finally, NCDA investigators also arrested defendant PARDEEP MALIK on March 6, and on March 20, a Nassau County grand jury sitting in Mineola, New York returned an indictment charging him with two counts Trademark Counterfeiting in the First Degree, and two counts of Trademark Counterfeiting in the Second Degree. That indictment is pending.

HAMANT MULLICK & BEST PRICE TRADERS NA, INC., UNIVERSAL PRICE, INC. & UNIVERSAL PRICE USA, INC.

VII.    According to the NYS Department of State, Best Price Traders NA, Inc. ("Best Price Traders") was a domestic business corporation formed on April 1, 2008 and dissolved on October 26, 2011.    The defendant HAMANT MULLICK of Franklin Square, New York was listed as the contact for service for process; no other officers or principals were listed.    Universal Price, Incorporated

sanitary pads.

Case 2:14-mj-00685-WDW   Document 1   Filed 07/24/14   Page 160 of 172 PageID #: 160
Case 2:14-mj-00290-WDW   Document 32-5   Filed 07/07/14   Page 7 of 11 PageID #: 157
Case 2:14-mj-00290-WDW   Document 1   Filed 03/28/14   Page 6 of 10 PageID #: 6

("Universal Price") is a domestic business corporation formed on April 26, 2010.  No principals are listed; the address for service of process is 856 Court Road, Franklin Square, New York, a few houses away from the address listed for Best Price Traders.  Universal Price USA, Incorporated is a domestic business corporation formed on August 26, 2013.  No principals are listed; the address for service of process is 100 East Mineola Avenue, Valley Stream, New York.

VIII.     On March 6, 2014, pursuant to search warrants issued on March 5 by the Honorable Judge Jerald S. Carter of New York State Supreme Court, Nassau County, NCDA investigators and other law enforcement officers searched: (1) 3480A Hampton Road, Oceanside, New York ("Oceanside Hampton Facility"), at which Glow Derma is listed as the lease and Pardeep Malik's son is listed as officer on the lease (2) 100 East Mineola Avenue Unit B, Valley Stream, New York, ("Valley Stream Location"), which is the address for service of process for Universal Price USA Inc. (3) 856 Court Road, Franklin Square, New York ("Franklin Square Location") which is the address for process of service for Universal Price and (4) a white 1999 GMC van, VIN 1GTHG35R6X1090119 ("White Van"), registered to Best Price Trader for which Hamant Mullick was listed as the contact for service of process for Best Price Trader and locations "1" through "3" above are all locations associated with Best Price Traders, Universal Price and Universal Price USA. Hamant Mullick is listed on Customs Import Data as the responsible person for imports destined for both the Valley Stream Location and the Franklin Square Location.  Hamant

Case 2:14-mj-00685-WDW   Document 1   Filed 07/24/14   Page 161 of 172 PageID #: 161
Case 2:14-mj-00290-WDW   Document 32-5   Filed 07/07/14   Page 8 of 11 PageID #: 158
Case 2:14-mj-00290-WDW   Document 1   Filed 03/28/14   Page 7 of 10 PageID #: 7

Mullick resides at the Franklin Square Location.  The mailbox at
the Valley Stream Location has the "Universal Price" name on it.

        IX.   During the searches, NCDA investigators seized
hundreds of thousands of tubes, some full and some empty, bearing
counterfeit Chapstick®[5] marks.  Officials with the Pfizer
Corporation, which produces Chapstick® (through its subsidiary,
Wyeth), confirmed that the marks on the seized goods were counterfeit.
Investigators seized machinery, chemicals and compounds, and
materials used to manufacture and produce these items on site,
including strips of stickers and labels, not yet affixed to the tubes,
bearing counterfeit marks.   Investigators seized invoices and other
financial records indicating that Best Price Traders, Universal Price
and Universal Price USA had been selling these products to wholesale
distributors across the United States since at least 2011.

        X.   NCDA investigators had identified these locations
during an investigation which began with visits by Nassau County
Fire Marshals on January 31, 2014 to a facility located at 178 East
Hawthorne Avenue, Valley Stream, New York ("Valley Stream Facility"),
where a fire had occurred in early 2013.  While there, the Fire
Marshals saw containers of what appeared to be Chapstick®, Vicks
Vaporub and Vaseline.  They also saw and took photographs of packages
addressed to "Universal Price, Inc."  They spoke with, and served

---

[5]   "Chapstick," registration number 3225776, is a word mark
registered by the Wyeth Corporation (which has been acquired by the
Pfizer Corporation) on the principal register of the USPTO for use

a summons for storage of propane canisters in an enclosed space on,
an individual who identified himself as Blessington Shellenberg,[6]
said he was manager of the facility, and told investigators that
Hamant Mullick was the owner of the business. Shellenberg said that
the business had another facility at 100 East Mineola Avenue, Valley
Stream, New York, which is also the address for process of service
for Universal Price USA.[7] Shellenberg voluntarily provided samples
of the purported Chapstick®, which investigators sent to the Pfizer
Corporation ("Pfizer") for analysis; Pfizer officials confirmed that
the lip balm provided by Shellenberg was not genuine Chapstick® and
bore counterfeit Chapstick® marks.

XI. On March 2, 2014, private investigators retained by
Pfizer who were watching the Valley Stream Facility saw three vehicles
there: a Budget Truck Rental box truck; a white Toyota bearing NY
plate GFF-3585; and a green minivan bearing NY plate W83-4VN. The
investigators followed the green minivan and the Budget truck to
3480A Hampton Road, Oceanside, New York. According to the NYS
Department of Motor Vehicles, the white Toyota was registered to

_____

with lip balm.
[6] Blessington Shellenberg was arrested by NCDA investigators on
March 26, 2014 and charged with Trademark Counterfeiting in the First
Degree.

[7] During February 2014, a private investigator retained by the
Pfizer Corporation, and a Special Agent with the Food & Drug
Administration Office of Criminal Investigations, respectively, saw
vehicles registered to Blessington Shellenberg in front of 100 East
Mineola Avenue, Valley Stream, New York, corroborating Shellenberg's
statement that the Valley Stream facility was also associated with
the business.

Case 2:14-mj-00685-WDW   Document 1   Filed 07/24/14   Page 163 of 172 PageID #: 163
Case 2:14-mj-00290-WDW   Document 32-5   Filed 07/07/14   Page 10 of 11 PageID #: 160
Case 2:14-mj-00290-WDW   Document 1   Filed 03/28/14   Page 9 of 10 PageID #: 9

"Juhi Mullick" at 856 Court Road, which was also the address for service of process for Universal Price. The green minivan was registered to Blessington Shellenberg. The Budget truck, according to the manager of the rental facility, was rented from March 1-2, 2014 to "Best Price Traders, Attn: Hamant Mullick."

XII. On March 3, 2014 the landlord of the Valley Stream Facility informed the NCDA investigators that his tenants had moved out. Investigators were permitted to inspect the facility. There they found drums of chemicals with shipping labels addressed to "Best Price Traders." They found approximately twenty additional lip balm containers bearing counterfeit Chapstick® marks. In front of the building, they saw a white 1999 GMC van, VIN 1GTHO35R6X1090119, without license plates. According to the NYS Department of Motor Vehicles, that vehicle was registered to "Best Price Trader" at 856 Court Road, Franklin Square, New York, which is also the address for service of process for Universal Price, and the registration address for the white Toyota registered to "Juhi Mullick" which private investigators had seen in front of the Hawthorne facility on March 2. The total value of seized counterfeit goods at all locations exceeds three million dollars ($3,000,000).

XIII. U.S. Customs Import Data lists Pardeep Malik as the responsible person at the Oceanside Lawson Facility and person associated with it. U.S. Customs Import Data also lists Pardeep Malik and Hamant Mullick as the responsible persons at the Franklin Square Location and persons associated with it, a location where counterfeit

merchandise was seized.  U.S. Customs Import Data lists Hamant Mullick as the responsible person at the Valley Stream Location and person associated with it.

XIV.  NCDA investigators also arrested defendant HAMANT MULLICK on March 6, 2014, and on March 20, a Nassau County grand jury sitting in Mineola, New York charged defendant HAMANT MULLICK in an indictment with two counts of Trademark Counterfeiting in the First Degree, and two counts of Trademark Counterfeiting in the Second Degree.  That indictment is pending.

WHEREFORE, I respectfully request that the Court issue a warrant for the arrests of the defendants PARDEEP MALIK and HAMANT MULLICK so that they may be dealt with according to law.  Because this investigation is ongoing, I respectfully request that this affidavit be ordered filed under seal until the arrest of both defendants.

Richard B. Branda
Special Agent
Homeland Security Investigations

Sworn to before me this
28th day of March, 2014

/S/William D. Wall
THE HONORABLE WILLIAM D. WALL
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

˜10˜

JMM:CPK:ECW
F. #2014R00538

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    -against-

PARDEEP MALIK and
HAMANT MULLICK,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No. _____
(T. 18, U.S.C., §§ 371,
981(a)(1)(C), 1349,
2320(a)(1), 2320(a)(2),
2320(a)(4), 2323(b), 2
and 3551 et seq.; T. 21,
U.S.C., § 853(p); T. 28,
U.S.C., § 2461(c))

THE GRAND JURY CHARGES:

INTRODUCTION

    At all times relevant to this Indictment, unless otherwise indicated:

The Defendants and Their Companies

    1.    The defendants PARDEEP MALIK and HAMANT MULLICK were

brothers.

    2.    The defendant PARDEEP MALIK was listed with the New York

Department of State ("NYS DOS") as the Chief Executive Officer of Glow Derma, Inc. ("Glow

Derma"), a closely held health and beauty products manufacturer incorporated in New York State

on October 7, 2009.

    3.    The defendant HAMANT MULLICK was listed with the NYS DOS as the

contact for service of process for Best Price Traders NA, Inc. ("Best Price Traders"), a closely held

health and beauty products manufacturer incorporated in New York State on April 1, 2008, and legally dissolved on October 26, 2011.  No other officers or principals were listed.

4.      The defendant HAMANT MULLICK resided at 856 Court Road, Franklin Square, New York from approximately May 2008 through March 2014.  Mullick's residence was the address for service of process for Universal Price, Inc. ("Universal Price"), a closely held health and beauty products manufacturer incorporated in New York State on April 26, 2010.  No other officers or principals were listed.

COUNT ONE
(Conspiracy to Traffic in Counterfeit Goods and
Labels and Packaging)

5.      The allegations contained in paragraphs one through four are realleged and incorporated as if fully set forth in this paragraph.

6.      In or about and between April 2008 and March 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants PARDEEP MALIK and HAMANT MULLICK, together with others, did knowingly and intentionally conspire to: (a) traffic in goods, to wit, substances purporting to be lip balm, cough suppression ointment, nasal decongestant, baby shampoo, baby oil, baby lotion, petroleum jelly and sanitary pads, knowingly using a counterfeit mark on and in connection with such goods, contrary to Title 18, United States Code, Section 2320(a)(1); and (b) traffic in labels, boxes, containers and packaging for such goods, knowing that a counterfeit mark had been applied thereto, the use of which was likely to cause confusion, cause mistake, and deceive, contrary to Title 18, United States Code, Section 2320(a)(2).

7.      In furtherance of the conspiracy and to effect the objects thereof, within the Eastern District of New York and elsewhere, the defendants PARDEEP MALIK and HAMANT

MULLICK, together with others, committed and caused to be committed, among others, the following:

Overt Acts

8.    On or about July 24, 2013, the defendant HAMANT MULLICK caused substances purporting to be (i) cough suppression ointment and nasal decongestant, bearing counterfeit Vicks® marks, and (ii) baby oil and baby lotion, bearing counterfeit Johnson's® marks, to be shipped from a Best Price Traders facility in Franklin Square, New York to Brooklyn, New York.

9.    On or about January 8, 2014, the defendant HAMANT MULLICK caused substances purporting to be (i) cough suppression ointment, bearing counterfeit Vicks® and VapoRub® marks, (ii) petroleum jelly, bearing counterfeit Vaseline® marks, and (iii) lip balm, bearing counterfeit Chapstick® marks, to be shipped from a Universal Price facility in Franklin Square, New York to Hackensack, New Jersey.

10.    On or about February 27, 2014, the defendant PARDEEP MALIK caused substances purporting to be petroleum jelly, bearing counterfeit Vaseline® marks, to be transported from a Glow Derma facility in Freeport, New York to a different Glow Derma facility in Oceanside, New York.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

COUNT TWO<br>(Trafficking in Counterfeit Goods)

11.    The allegations contained in paragraphs one through four are realleged and incorporated as if fully set forth in this paragraph.

12.     On or about March 6, 2014, within the Eastern District of New York and elsewhere, the defendants PARDEEP MALIK and HAMANT MULLICK, together with others, did intentionally traffic and attempt to traffic in goods, to wit, lip balm, cough suppression ointment, nasal decongestant, baby shampoo, baby oil, baby lotion, petroleum jelly and sanitary pads, and knowingly used a counterfeit mark on and in connection with such goods.

(Title 18, United States Code, Sections 2320(a)(1), 2 and 3551 et seq.)

COUNT THREE
(Trafficking in Counterfeit Labels and Packaging)

13.     The allegations contained in paragraphs one through four are realleged and incorporated as if fully set forth in this paragraph

14.     On or about March 6, 2014, within the Eastern District of New York and elsewhere, the defendants PARDEEP MALIK and HAMANT MULLICK, together with others, did intentionally traffic and attempt to traffic in labels, boxes, containers and packaging, knowing that a counterfeit mark had been applied thereto, the use of which was likely to cause confusion, to cause mistake, and to deceive.

(Title 18, United States Code, Sections 2320(a)(2), 2 and 3551 et seq.)

COUNT FOUR
(Trafficking in Counterfeit Drugs)

15.     The allegations contained in paragraphs one through four are realleged and incorporated as if fully set forth in this paragraph.

16.     On or about March 6, 2014, within the Eastern District of New York and elsewhere, the defendants PARDEEP MALIK and HAMANT MULLICK, together with others, did knowingly and intentionally traffic and attempt to traffic in counterfeit drugs, to wit: substances purporting to be cough suppression ointment and nasal decongestant, bearing counterfeit Vick's® marks.

(Title 18, United States Code, Sections 2320(a)(4), 2 and 3551 et seq.)

COUNT FIVE
(Conspiracy to Commit Mail Fraud)

17.     The allegations contained in paragraphs one through four are realleged and incorporated as if fully set forth in this paragraph.

18.     In or about and between April 2008 and March 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants PARDEEP MALIK and HAMANT MULLICK, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud customers of Glow Derma, Inc., Best Price Traders NA, Inc. and Universal Price, Inc., and to obtain money and property from them by means of materially false and fraudulent pretenses, representations and promises and, for the purpose of executing such scheme and artifice, did cause mail matters and things, to wit: boxes and containers containing substances purporting to be lip balm, cough suppression ointment, nasal decongestant, baby shampoo, baby oil, baby lotion, petroleum jelly and sanitary pads, all bearing counterfeit trademarks, to be delivered by private and commercial interstate carriers, contrary to Title 18, United States Code, Section 1341.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION AS TO
## COUNTS ONE THROUGH FOUR

19.     The United States hereby gives notice to the defendants charged in Counts One through Four that, upon their conviction of any such offenses, the government will seek forfeiture in accordance with Title 18, United States Code, Section 2323(b), which requires any person convicted of such offenses to forfeit any article, the making or trafficking of which is prohibited under such offenses, any property used, or intended to be used, in any manner or part, to commit or facilitate the commission of such offenses, and any property constituting or derived from proceeds obtained directly or indirectly as a result of the commission of such offenses.

20.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

> (a)     cannot be located upon the exercise of due diligence;
>
> (b)     has been transferred or sold to, or deposited with, a third party;
>
> (c)     has been placed beyond the jurisdiction of the court;
>
> (d)     has been substantially diminished in value; or
>
> (e)     has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 2323(b); Title 21, United States Code, Section 853(p))

## CRIMINAL FORFEITURE ALLEGATION AS TO
## COUNT FIVE

21.    The United States hereby gives notice to the defendants charged in Count

Five that, upon their conviction of any of such offense, the government will seek forfeiture in

accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States

Code, Section 2461(c), which require any person convicted of such offenses to forfeit any

property, real or personal, constituting or derived from proceeds traceable to such offenses.

22.    If any of the above-described forfeitable property, as a result of any act or

omission of the defendants:

        (a)    cannot be located upon the exercise of due diligence;

        (b)    has been transferred or sold to, or deposited with, a third party;

        (c)    has been placed beyond the jurisdiction of the court;

        (d)    has been substantially diminished in value; or

        (e)    has been commingled with other property which cannot be divided

without difficulty;

8

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

_____
FOREPERSON

LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY: _____
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. C.131